Ralph LUTZ and Hazel M. Lutz,
Plaintiffs and Appellants,

v.

Adam KRAUTER and Ann Krauter,
Defendants and Appellees.

Civil No. 960022.

Supreme Court of North Dakota.

Sept. 10, 1996.

Michael Geiermann of Rolfson Schulz Lervick & Geiermann Law Offices, Bismarck, for plaintiffs and appellants.

Timothy A. Priebe of Mackoff, Kellogg, Kirby & Kloster, PC, Dickinson, for defendants and appellees.

VANDE WALLE, Chief Justice.

This is an appeal from the trial court's judgment that Ralph and Hazel M. Lutz failed to create an easement over the property of Adam and Ann Krauter. The Lutzes claim the trial court erred in its conclusion an easement did not exist either as a matter of law or by implication. Because the trial court did not err in finding a valid easement did not exist, we affirm.

In 1977, the Lutzes purchased real property described as Lots One and Two of Block One in Haag's Addition to the City of Dickinson, North Dakota. The property was conveyed by a warranty deed. The Lutzes built a house and still claim this property as their residence.

In 1978, Ralph Lutz, individually, obtained a parcel of real property described as Lot 1, Auditor's Plat No. 3 to the City of Dickinson. The lot measured roughly 165 feet by 1,255 feet. The lot was bordered on the east by Tenth Avenue West, on the north by Twelfth Street, on the south by Tenth Street, and on the west by the property in Haag's Addition, including the Lutz property. Lot One of the

Auditor's Plat No. 3 was later replatted and divided into two blocks of land, with each block containing six lots. Lot One of Block One is adjacent to the eastern property line of the Lutz property in Haag's Addition. Thus the Lutzes had ownership of two adjacent lots.

In 1979, the Lutzes sought to expand their house. The proposed addition violated residential lot-coverage restrictions, and city officials instructed the Lutzes they would need to acquire interest in another parcel of adjacent property. Subsequently, both Ralph and Hazel Lutz executed an instrument which purported to create an easement across the southern property line of Lot One, Block One, Auditor's Plat No. 3. The document stated:

> "We, Ralph P. Lutz and Hazel M. Lutz, husband and wife, of 1180 11th Avenue West, City of Dickinson, County of Stark, State of North Dakota, owners of the land described below, in consideration of One Dollar and other good and valuable consideration, the receipt which is acknowledged, hereby grants, bargains, sells, and conveys [sic] a 14' Easement along the South Boundary of Lot One (1), Block One (1), Auditor's Plat No. 3 for the purpose of dedication to Lots One (1) and Two (2), Haag's First Addition to the City of Dickinson, Stark County, North Dakota.

> 'This Easement is for the benefit of and appurtenant to that land, or any portion thereof, and the County of Stark, State of North Dakota, described as follows:

> 'Lot One (1) and Two (2), Block 1, Haag's First Addition to the City of Dickinson, Stark County, North Dakota."

The document was duly recorded at the Stark County Register of Deeds Office. The validity of the land's legal description was challenged only in the Defendant's closing argument.

After recording the claimed easement document, the Lutzes built an attached garage with doors opening both to the east and the west so a vehicle could drive completely through the garage. By using the easement the Lutzes could drive onto their property from the east, directly from Tenth Avenue West. Mr. Lutz testified this type of access

was a primary purpose for creating the easement. The Lutzes used the easement throughout their ownership of the property.

In 1987, the Lutzes, by quitclaim deed, conveyed Lot One, Block One, Replat of Block One, of Auditor's Plat No. 3, to Anton and Magdelen Schwindt. There was no expressed reservation of the easement claimed by the Lutzes, nor, at the time of the conveyance, did the Schwindts have any knowledge of the easement claimed by the Lutzes. The Schwindts made no improvements to the property.

In 1989, the Schwindts listed Lot One of Block One, Replat of Block One of Auditor's Plat No. 3 with West Plains Realty for sale at sixteen thousand dollars. Negotiations commenced shortly thereafter between the Schwindts and Adam and Ann Krauter. The parties reached a negotiated price of fifteen thousand dollars. However, during the course of the negotiations, the Krauters were informed by Jim Christianson of West Plains Realty that the Lutzes claimed an easement along the south side of the property. A title opinion disclosed the easement for the benefit of the Lutzes' property was recorded. Based on this discovery, the Krauters refused to purchase the property at fifteen thousand. The Schwindts then made a counter offer to sell the property for fourteen thousand dollars. The Krauters accepted the offer and the Schwindts transferred the property by warranty deed to the Krauters. The deed was recorded at the Stark County Register of Deeds Office.

The Krauters built a house on the property and occupied it in late 1989. While building their house, the Krauters placed a fence along the northern side of the fourteen foot easement. The Lutzes continued to use the easement during this period and the Krauters did not object.

In 1994, the Krauters blocked off the easement with a wooden fence, planted grass across the easement, and installed a curb and drain where the easement entered Tenth Avenue West. Shortly thereafter, the Lutzes initiated this action for "enforcement of their easement" and for "injunctive relief preventing Defendants of the use and interference

with Plaintiff's easement right." The trial court found, however, that despite the barricade, the Lutzes were still able to use the double-door garage. The use, however, was much more difficult than before. Mr. Lutz testified that to use the western-facing garage door, he could drive along a driveway on the southern edge of their property and turn around behind the garage. The trial court found the Lutzes were able to use the garage, so the barricade did not cause a complete deprivation of use.

The trial court held the Lutzes did not create a valid express easement because they owned both the dominant and servient estates. Also, the trial court stated that even if an easement had been created, this interest would have been transferred to the Schwindts, via the quitclaim deed. The trial court further concluded that the Lutzes had failed to establish an easement by implication, and because access to their property had not been denied, the Lutzes could not establish an easement by necessity. Thus, the trial court dismissed the Complaint. The Lutzes raise three issues on appeal.

### I

■ The trial court, assuming for its purpose the legal description of the "claimed easement document" was correct, concluded the document "did not create a valid easement because the Plaintiffs owned both the dominant and servient tenements at the time the easement was attempted to be created. Section 47–05–06 of the North Dakota Century Code provides that a servitude thereon cannot be held by the owner of the servient tenement. A servitude is also extinguished by the vesting of the right to the servitude and the right to the servient tenement in the same person under N.D.C.C. § 47–05–12(1)."

A "servient tenement" is the land upon which an easement is attached. N.D.C.C. § 47–05–04. The "dominant tenement" is the land to which the easement is attached. N.D.C.C. § 47–05–03. A servitude can be created only by one who has a vested estate in the servient tenement. N.D.C.C. § 47–05–05. If an easement exists in the case before us, under sections 47–05–03 and 47–05–04, the parcel of land now owned by the

Krauters would be the servient tenement and the tract of land owned by the Lutzes would be the dominant tenement. But, at the time the easement was attempted to be created, the Lutzes were the owners of the servient tenement and therefore could not hold the easement under section 47–05–06. They argue, however, that only Ralph Lutz, and not Hazel Lutz, owned the servient parcel and therefore the statute does not apply. We have not previously decided the unity of ownership which would implicate the provision of section 47–05–06.

Under the laws of this State, a spouse has an interest in the other spouse's property. For example, the "inchoate rights" of one spouse in the other spouse's property have been recognized by the courts and, accordingly, a reservation to a spouse has been upheld in the face of the common law rule that a reservation or exception in a deed of conveyance cannot operate as a conveyance to a third party who is a stranger to the title. *Malloy v. Boettcher*, 334 N.W.2d 8, 11 (N.D. 1983) [Sand, J., concurring specially]. This principle of "inchoate rights," applicable to homestead property, *see* Chapter 47–18, N.D.C.C., was recognized by the Lutzes when the document attempting to create the easement over the servient estate was signed by both Hazel and Ralph Lutz although Ralph Lutz was the only owner of record. Thus we interpret section 47–05–06, N.D.C.C., to apply where a spouse who is the sole owner of the servient tenement attempts to convey an easement over the servient tenement to both spouses as owners of the dominant tenement.

### II

■ But an easement may also be created by implication. *Roll v. Keller*, 336 N.W.2d 648, 650 (N.D.1983). The essential elements of an easement by implication are unity of title of the dominant and servient tenement and a subsequent severance; apparent, permanent, and continuous use; and, the easement must be important or necessary for the enjoyment of the dominant tenement. *Id.*

The trial court concluded the Lutzes failed to sustain their burden of proving an

implied easement to their property: "Plaintiffs have access to their property. Their primary access is from the west, and they have complete access to their lot. The claimed easement is not necessary for the use or enjoyment of their property."

■ The Krauters further contend the Lutzes have not proven the first two elements, i.e., unity of title and apparent, permanent and continuous use. In view of our holding with regard to the first issue, unity of title of the dominant and servient tenement exists as a matter of law. But, with regard to the apparent use, the trial court found that at "the time of said purchase and during the time they owned the property, the Schwindts were unaware of any easement claim" by the Lutzes. This finding is unchallenged. The fact the Krauters were aware of the Lutzes' claim to the right-of-way at the time the Krauters purchased the property from the Schwindts is, we believe, immaterial.[1] Assuming, for purposes of this opinion only, that we agree the Lutzes proved the other elements necessary for an easement by implication, that easement could only arise at the time of the conveyance from the Lutzes to the Schwindts.

The finding of lack of knowledge is fatal to the concept of a quasi-easement or implied easement, which the Lutzes would have us adopt, because that concept is grounded in the intentions of the parties at the time of the transaction. Many of our statutes are derived from the California Civil Code, or the Field Code, *Furlong Ent. v. Sun Exploration & Prod.*, 423 N.W.2d 130, 134–135 f.n. 14–19 (N.D.1988), and we look to states with similar statutes for guidance. *Id.* California, which has a statutory provision, Cal. Civil Code § 805, identical to section 47–05–06, N.D.C.C., explains the concept of quasi-easement as follows:

"Miller & Starr, in discussing the sale of property, asserts the following: 'Although a person cannot have an easement on his own property, an owner may use one por-

tion of his land for the use and benefit of another portion. So also, an owner of two adjoining parcels of real property may make use of one parcel for the benefit of the other. In such cases, for purposes of identification, the portion or parcel that is being used is called the 'quasi servient tenement.'

'If the owner's use of the "quasi servient tenement" has continued for a period of time in an obvious and permanent manner, a division of his title implies that the parties intended to transfer the obvious burdens and benefits with the property conveyed. Therefore, if the owner conveys the "quasi dominant tenement," the grantee receives an implied easement for the use and benefit of his property over the "quasi servient tenement" retained by the owner-grantor.

'The rule has been summarized as follows: ". . . where the owner of two tenements sells one of them, or the owner of an entire estate sells a portion, the purchaser takes the tenement, or portion sold, with all the benefits and burdens which appear, *at the time of the sale,* to belong to it, as between it and the property which the vendor retains. This is one of the recognized modes by which an easement or servitude is created. No easement exists, so long as there is a unity of ownership, because the owner of the whole may, at any time, rearrange the qualities of the several parts; *but the moment a severance occurs, by the sale of a part,* the right of the owner to redistribute properties of the respective portions ceases; and easements or servitudes are created, corresponding to the benefits and burdens mutually existing at *the time of the sale.* This is not a rule for the benefit of purchasers only, but is entirely reciprocal; hence, if, instead of a benefit conferred, a burden has been imposed upon the portion sold, the purchaser, provided the marks of this burden are open and visible, takes the property with the servitude upon it. The parties are

---

1. The Lutzes contend the Krauters were not only aware of their claim, but recognized it because the purchase price paid to the Schwindts was reduced as a result of the claim. Although that is one inference which can be drawn, an equally acceptable inference is that the Krauters were aware of the claim, did not recognize it as valid, but knew they were purchasing a lawsuit if they purchased the property. That is what happened.

presumed to contract in reference to the condition of the property at the time of the sale, and neither has a right, by altering arrangements then openly existing, to change materially the relative value of the respective parts. (emphasis added)

'For example, if the owner of parcels A and B uses a road over parcel A for ingress and egress from a public highway to a building located on parcel B, a subsequent conveyance of parcel B by an instrument that fails to mention the road, passes an access easement across lot A for the benefit of lot B.

'Since an easement by implication will only arise where there has been an existing use of one parcel or portion of property for the benefit of another, an implied easement is necessarily an appurtenant easement....

'The doctrine of implied easements is applied by the courts to carry into effect the intention of the parties as manifested by the facts and circumstances of the transaction. The grantor's intentions can be shown by his representations or by representations by his broker that the use of the easement will pass to the grantee. However, the implication only arises where the documents of conveyance fail to mention the easement and where the parties fail to indicate a contrary intention. In other words, a court will not imply the creation of an easement where the parties have expressed contrary intentions.' (3 Miller & Starr, op. cit., supra, § 18:23, pp. 300–301, and cases cited therein.)"

*Horowitz v. Noble,* 79 Cal.App.3d 120, 144 Cal.Rptr. 710, 718–20 (1978) (citations omitted) (footnotes omitted), quoting 3 Miller & Starr, Current Law of California Real Estate (1977). *See also Mikels v. Rager,* 232 Cal. App.3d 334, 284 Cal.Rptr. 87, 101 (1991), [quoting with approval Miller & Starr § 15:24 at p. 461: "To imply a reservation of an easement to benefit the grantor, all of the general requirements of implication must be present. However, the courts require that the grantee have knowledge of the existing use or that it is so obvious and permanent that the grantee's knowledge of its use can be implied."]

Because the Schwindts were unaware of the Lutzes claimed easement at the time of the sale, the moment the severance occurred, there was no "intention of the parties as manifested by the facts and circumstances of the transaction" which would effect an easement in favor of the Lutzes on the property transferred to the Schwindts. Rather, the Lutzes appear to assume there was some transaction between them and the Krauters. But there was no such transaction and the principles of implied easement are applicable between the original owners and their immediate grantees. *See Horowitz,* 144 Cal.Rptr. at 720. If there could be no implied easement between the Lutzes and the Schwindts, which there could not be because the Schwindts lacked knowledge of the use at the time they bought the property from the Lutzes, there is no transaction between the Lutzes and the Krauters to support such an easement.

The trial court's conclusion that the claimed easement was not necessary for the use and enjoyment of the Lutzes' property, although not necessary to our disposition of this matter, appears to be a finding of fact which we will not disturb on appeal. Rule 52(a), N.D.R.Civ.P.

### III

The Lutzes also take issue with the trial court's conclusion that the quitclaim deed from the Lutzes to the Schwindts transferred all the interest of the Lutzes in the property to the Schwindts. Again, to show their intent, the Lutzes rely on the knowledge of the Krauters at the time they purchased the property rather than the Schwindts' knowledge at the time they purchased and owned the property. As we have held, the Lutzes could not create for themselves an easement in the property they owned, and as a result the written easement is ineffective. The implied easement could only have arisen out of the deed transaction from the Lutzes to the Schwindts and only if the Schwindts had knowledge of the Lutzes' use. They did not. Under these facts the conclusion of the trial court is correct.

Our conclusion in this case is supported by the decision in *Royse v. Easter Seal Society*

*for Crippled Children,* 256 N.W.2d 542, 545 (N.D.1977), cited with approval in *Roll v. Keller,* 336 N.W.2d at 651, wherein this court determined that exceptions or exclusions of property should be prominently set forth in the granting clause of a deed and that anything short of this encourages practices which lend themselves readily to fraud and deception. This clearly was a situation in which the deed from the Lutzes to the Schwindts should have contained an explicit reservation of a right-of-way over the property conveyed. It did not and, in the absence of evidence that the Schwindts were clearly aware of the Lutzes' intent to retain an easement, we will not impose an implied easement in the Lutzes' favor.

The document the Lutzes may have been required to execute to satisfy the Dickinson ordinances does not alter the long-held concept of property law that owners of property cannot convey an easement to themselves in this property; nor does the document satisfy the admonition in *Royse,* 256 N.W.2d at 545, that "exceptions or exclusions of property should be set forth in the granting clause with the same prominence as the property granted...." That statement, made in the context of a deed that attempted to reserve an easement, is even more applicable to a conveyance such as this wherein the attempted reservation is not within the conveyance at all but rather relies on an invalid instrument and a use not apparent to the immediate grantee.

The judgment is affirmed.

SANDSTROM, NEUMANN, MARING, and MESCHKE, JJ., concur.