1998 ND 38

**Scott A. GRIFFETH, Plaintiff and Appellant,**

**v.**

**Gerald EID, Brenda Eid, individually and/or d/b/a Riverside Manor Homes, Inc., Defendants and Appellees.**

**Civil No. 970258.**

Supreme Court of North Dakota.

Feb. 12, 1998.

Scott A. Griffeth, West Fargo, pro se.

James E. Nicolai of McLarnan, Hannaher, Vaa, Skatvold & McLarnan, P.L.L.P., Moorhead, MN, for defendants and appellees.

SANDSTROM, Justice.

[¶ 1] Scott A. Griffeth appeals from a judgment dismissing his action to establish an easement across property owned by Gerald and Brenda Eid. Because the trial court's findings are not clearly erroneous, we affirm.

I

[¶ 2] Griffeth acquired Auditor's Lot 7, by a deed dated December 5, 1994, for $2,000 at a Cass County tax sale. The Eids had owned Lot 7, but it reverted to Cass County on November 16, 1993, for nonpayment of taxes. Griffeth brought this action to establish an easement across Auditor's Lot 20. Lot 20 is owned by the Eids and serves as a driveway for apartment buildings owned by the Eids on Lots 16, 17, and 18, which are to the north and south of Lot 20. Lot 20 and Lot 7 were owned by common title prior to November 1993, and had been one lot, known as Auditor's Lot 7, until subdivided in 1986.

[¶ 3] The matter was tried without a jury on March 31, 1997. At the end of the trial, the court asked the parties to brief several additional issues. The court issued its findings of fact, conclusions of law, and order for judgment on May 6, 1997, concluding Griffeth had "failed to sustain his burden of proof for the creation of an easement by necessity or implication." Judgment was entered May 13, 1997, and the notice of entry of judgment was filed June 12, 1997.

[¶ 4] Griffeth appeals from the May 13, 1997, judgment. The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06. This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. §§ 28–27–01 and 28–27–02. The appeal was timely under N.D.R.App.P. 4(a).

II

[¶ 5] Two types of easements are relevant to this case: easements implied from pre-existing use and easements by necessity. Both types of easements are types of implied easements and have different elements. *See generally* 25 Am.Jur.2d *Easements and Licenses* §§ 23–44 (1996). While we have previously used the term "easement by implication," *see, e.g., Lutz v. Krauter,* 553 N.W.2d 749, 751 (N.D.1996), for clarity we will use the term "easement implied from pre-existing use." We will use the term "implied easement" when referring generally to both easements by necessity and easements implied from pre-existing use.

[¶ 6] A party seeking an implied easement has the burden of proving the existence of the easement by clear and convincing evidence. *See* 25 Am.Jur.2d *Easements and Licenses* § 134 (1996); *cf. Backhaus v. Renschler,* 304 N.W.2d 87, 89 (N.D.1981) (holding prescriptive easement must be proved by clear and convincing evidence). The trial court's findings of fact are subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). *See Lutz* at 753. The trial court's findings are not clearly erro-

neous if they have support in the evidence and we are not left with a definite and firm conviction a mistake has been made. *See Gajewski v. Taylor*, 536 N.W.2d 360, 362 (N.D.1995); *see also Giese v. Morton County*, 464 N.W.2d 202, 203 (N.D.1990). Whether the underlying facts support the existence of an implied easement is a question of law subject to de novo review. *See Gajewski* at 362.

### III

[¶ 7] On appeal, Griffeth contends he met his burden to establish an easement.

### A

[¶ 8] In *Lutz* we said the elements of easements implied from pre-existing use are "unity of title of the dominant and servient tenement and a subsequent severance; apparent, permanent, and continuous use; and, the easement must be important or necessary for the enjoyment of the dominant tenement." *Lutz* at 751; *see* N.D.C.C. §§ 47–05–03, 47–05–04 (defining dominant and servient tenements). One cannot have an easement on one's own property, *see* N.D.C.C. § 47–05–06; *Lutz* at 752, however:

"it is both possible and frequent to find one part of a property being used for the service of another part.... This use of one part land for the service of another part can be described as a quasi-easement, with the serviced part as the quasi-dominant tenement, and the burdened part as the quasi-servient tenement.

"Where a quasi-easement has existed and the common owner thereafter conveys to another the quasi-dominant tenement, the conveyee is in a position to claim an easement by implication with respect to the unconveyed quasi-servient tenement."

4 *Powell on Real Property* § 34.08[1], [2] (1994) (footnote omitted); *Lutz* at 752–53. Whether an easement implied from preexisting use will be created from the existing quasi-easement at the time of conveyance depends upon whether the quasi-easement was apparent, permanent, and continuous, and important or necessary for the enjoyment of the conveyed dominant parcel. *See* *Lutz* at 751; 4 *Powell on Real Property* § 34.08[2][a] (1994).

[¶ 9] In this case, the relevant time period to examine for the existence of a quasi-easement and the other necessary elements is when Lot 7 was conveyed to the county. *See Lutz* at 752–53; *see also Hillary Corp. v. United States Cold Storage, Inc.*, 250 Neb. 397, 405, 550 N.W.2d 889, 895 (1996). The trial court found there was unity of title at one time, but "at the time Lot 7 was conveyed to Cass County by Auditor's Tax Deed for nonpayment of taxes, there was no apparent, permanent, continued use of Lot 20 to access Lot 7 other than perhaps a limited use for purpose of maintenance." This finding is not clearly erroneous, because there is no evidence the Eids made a permanent and continuous use of Lot 20 for the benefit of Lot 7, beyond the limited use found by the trial court, during the time they owned both properties. Griffeth testified he had used Lot 20 for limited access to Lot 7, and he also testified he had seen City trucks use Lot 20 for access. These events occurred after the Eids no longer owned Lot 7, and, therefore, do not support the creation of an easement implied from pre-existing use.

[¶ 10] Lack of an apparent, permanent, and continuous use, in and of itself, would be sufficient to deny Griffeth an easement implied from pre-existing use. *See Lutz* at 753. The trial court, however, also questioned the necessity of an easement implied from pre-existing use across Lot 20. "An easement by implication does not arise merely because its use is convenient to the beneficial enjoyment of the dominant portion of the property; the term 'necessary' means that there can be no other reasonable mode of enjoying the dominant tenement without the easement.... Some courts have adopted as the test of necessity the question of whether the use is one for which a substitute can be furnished by reasonable labor and expense." 25 Am.Jur.2d *Easements and Licenses* § 35 (1996) (footnotes omitted); *see Hillary Corp.* at 898 (holding "the degree of necessity required to prove the existence of an [easement implied from pre-existing use] is 'reasonable necessity' "); *see also* 4 *Powell on Real ·Property* § 34.08[2][d] (1994) (sug-

gesting use of term "important" rather than "necessary" because "[w]hen this prerequisite is phrased in terms of 'necessity,' a court is no longer properly considering the problem of implication from a quasi-easement but has crossed over (perhaps unwittingly) into the domain of easements by necessity" (footnote omitted)).

[¶ 11] The trial court's findings included:

"15. There exists possible access to Lot 7 through a city park [Lot 8] to the south, Lot 20 to the west, and Lot 25 to the north.

"16. Plaintiff has failed to explore and/or establish whether alternate easements through other adjacent properties are available and practicable.

"17. Defendants have specifically offered access through Lot 25 under terms which the Court finds reasonable. Plaintiff has failed to explore access through the City Park which has been used by other landowners to access their property."

The testimony supports these findings. Griffeth has done some informal checking into crossing the city park south of his property for access to his property, but has not had this option formally eliminated by the City of West Fargo. Additionally, the Eids own Lot 25 to the north and have offered Griffeth an easement across it for $1,500. There is no evidence indicating or contending this is an unreasonable price. Griffeth contends even if he obtains an easement from the Eids across Lot 25, the Eids do not own the property connecting Lot 25 to the nearest public roadway. While this may be true, the burden, as stated above, is on Griffeth to establish there is no other reasonable access to Lot 7 without an easement across Lot 20. Until Griffeth eliminates the possibility of access across Lot 25 and the possibility of access through the city park to the south, it cannot be said access across Lot 20 is "important or necessary for the enjoyment of the dominant tenement." *Lutz* at 751.

### B

[¶ 12] A way of necessity or easement by necessity:

"arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is shut off from access to a road to the outer world by the land from which it is severed or by this land and the land of strangers."

25 Am.Jur.2d *Easements and Licences* § 36 (1996) (footnote omitted); *see Industrial Comm'n v. McKenzie County Nat'l Bank,* 518 N.W.2d 174, 178 (N.D.1994); *City of Bismarck v. Casey,* 77 N.D. 295, 303, 43 N.W.2d 372, 377 (1950). The result is "by implication of the law ... a way of necessity across the grantor's property to the roadway." *Industrial Comm'n* at 178. Several distinctions exist between easements implied from pre-existing use and easements by necessity:

"Questions in respect of the permanency, apparency, and continuity of servitude, which are of importance in connection with easements implied on severance of property from the fact that a use had been imposed on one part of the property for the benefit of another part, are not applicable to typical ways of necessity. There is a definite distinction between such an easement and a way of necessity, mainly because a way of necessity does not rest on a pre-existing use but on the need for a way across the granted or reserved premises. A way of necessity does not depend on a prior use or 'quasi-easement' before severance of the property. A way of necessity need not be in existence at the time of the conveyance."

25 Am.Jur.2d *Easements and Licenses* § 38 (1996) (footnotes omitted). An easement by necessity may not be obtained over the land of a third party; however, an easement by necessity will not be implied "if the claimant can obtain a means of access to his land at reasonable expense" or "if the claimant has another mode of access to his land, however inconvenient, either by another way over his own land or by a right of way over the land of another...." 25 Am.Jur.2d *Easements and Licenses* §§ 39, 42, 43 (1996) (footnotes omitted). "The burden of proving that an alternative mode of access is not available is on the person claiming the easement by necessity." 25 Am.Jur.2d *Easements and Licenses* § 43 (1996) (footnote omitted). Addi-

tionally, an easement by necessity does not have a definite location, and unless an agreement exists otherwise, the owner of the servient parcel may choose a reasonable route. *See Bode v. Bode,* 494 N.W.2d 301, 304–05 (Minn.Ct.App.1992).

[¶ 13] The court's findings 15, 16, and 17, quoted above, also support its conclusion an easement by necessity had not been established. The Eids offered an easement across Lot 25 for $1,500, and access through the city park south of Griffeth's property has not been extinguished as a possibility. Griffeth has offered nothing but supposition in stating these alternatives are not available or reasonable. We note, however, it is against public policy to leave land "unfit for occupancy or successful cultivation." *City of Bismarck v. Casey,* 77 N.D. 295, 304, 43 N.W.2d 372, 378 (1950). Griffeth is not foreclosed from returning to the district court and again seeking an easement by necessity if he can establish, by clear and convincing evidence, no other alternative route is available. The trial court also found, however, the Eids' "position that Lot 20 will not accept additional unrestricted traffic is reasonable." As such, if an easement over Lot 20 is ultimately found to be necessary, Griffeth is not auto-matically entitled to access giving him the "best" use of his land. *See* N.D.C.C. § 47–05–07 ("The extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired."). Rather, the scope of the easement granted depends not only on necessity, but also on whether it is "consistent with the full reasonable enjoyment of the servient estate"—in this case, Lot 20. 25 Am.Jur.2d, *Easements and Licenses* § 92 (1996) (footnote omitted).

## IV

[¶ 14] The judgment of the district court is affirmed.

[¶ 15] VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.