1998 ND 118

**MOUGEY FARMS, Plaintiff, Appellant and Cross–Appellee,**

v.

**Chris KASPARI, David Kaspari, Sarah Kaspari, Defendants, Appellees and Cross–Appellants,**

and

**North Dakota State Engineer David A. Sprynczynatyk, Defendant.**

**Civil No. 970373.**

Supreme Court of North Dakota.

June 4, 1998.

Kip M. Kaler, of Kaler Law Office, Fargo, for plaintiff, appellant and cross–appellee.

Benjamin E. Thomas (argued) and J. Philip Johnson (on brief), of Wold Johnson, Fargo, for defendants, appellees and cross–appellants.

SANDSTROM, Justice.

[¶ 1] Mougey Farms appealed from a judgment dismissing its claims for an easement to pump water through an irrigation system across land owned by David Kaspari, Sarah Kaspari, and Chris Kaspari. The Kasparis cross-appealed from the trial court's decision reforming a lease between Kasparis and Mougey and partitioning the irrigation system. We reverse the summary judgment dismissing Mougey's eminent domain claim and affirm the remainder of the judgment.

I

[¶ 2] Mougey owns farmland in Ransom County, immediately north of Kasparis' farmland. The Sheyenne River runs on the south side of Kasparis' land and is not adjacent to Mougey's land.

[¶ 3] In 1979, Kasparis began leasing their land to Mougey. The State Engineer issued David Kaspari a conditional water permit, dated July 9, 1982,[1] to irrigate 478 acres of Kasparis' land from the Sheyenne River. The conditional permit required beneficial use of the water before August 1985. In 1983, Mougey agreed to help Kasparis develop the water rights for Kasparis' land, and in 1984 Mougey operated an above-the-ground irrigation system on Kasparis' land.

[¶ 4] The parties subsequently agreed to install an underground irrigation system to service both Kasparis' and Mougey's land. The parties purchased irrigation equipment for the system, and Kasparis financed their part of the purchase at Citizen's State Bank at Enderlin. Mougey agreed to pay additional rent for the irrigation equipment financed by Kasparis, and the parties also agreed Mougey would receive water rights for its land. The parties installed an underground irrigation system on Kasparis' land. The irrigation system ran 1600 feet from the point of diversion on the Sheyenne River to a center pivot irrigator on Kasparis' land and from the center pivot another 1900 feet east on Kasparis' land. Mougey also installed pipe from the center pivot to its land.

[¶ 5] In November 1984 and January 1985, the State Engineer, upon the request of David Kaspari, approved the transfer of 134 acres of the water permit for Kasparis' land to Mougey's land. In February 1985, the State Engineer issued David Kaspari a perfected water permit to irrigate 551.6 acres from the Sheyenne River, allowing 134 acres on Mougey's land and 417.6 acres on Kasparis' land.

[¶ 6] Effective March 1, 1985, Mougey leased Kasparis' land for a 10–year term. As part of the rent, Mougey agreed to pay Kasparis $3,900 per year for the cost of pipe and wire for the irrigation system. Mougey also agreed to pay Kasparis additional rent of $6,788.94 per year for eight years for the purpose of buying the irrigation system from Kasparis. Mougey and Kasparis also executed a written easement allowing Mougey to run water through the irrigation system on Kasparis' land to Mougey's land. The easement apportioned ownership of the irrigation system, specifying Mougey owned two-thirds and Kasparis owned one-third of the 1600 feet of pipe and wire from the point of diversion to the center pivot, Kasparis owned the 1900 feet of pipe and wire from the center pivot east, and Mougey owned the pipe and wire from the center pivot north to its land. The easement also specified it would terminate if Mougey no longer leased Kasparis' land.

[¶ 7] Effective March 20, 1987, Mougey and Kasparis entered a new 10–year written lease. As part of the rent, Mougey agreed to make Kasparis' payments due to Citizens State Bank for the irrigation equipment. Under the 1987 lease, Mougey made semiannual payments of $6,006.27 due on Kasparis' loan with Citizens State Bank. In August 1996, Kasparis informed Mougey they would not renew the 1987 lease, nor continue to allow Mougey to pump water through the irrigation system to Mougey's land.

[¶ 8] Mougey sued Kasparis, seeking to continue to pump water across Kasparis' land

1. The conditional permit identified a priority date of February 1, 1977.

by virtue of an implied easement, an easement by necessity, or an easement by condemnation. Mougey sought reformation of the March 1987 lease, alleging Kasparis' loan at Citizens State Bank encompassed more than the actual cost of the irrigation equipment and seeking the difference between the amount Mougey paid to satisfy Kasparis' loan and the actual cost of the equipment. Mougey also sought partition of the irrigation system.

[¶ 9] The trial court granted summary judgment dismissing Mougey's claims for an easement to pump water across Kasparis' land. After a bench trial, the court reformed the 1987 lease and awarded Mougey $18,050 for excess payments made under the lease. The court also ordered partition of the irrigation system. Mougey appealed, and Kasparis cross-appealed.

[¶ 10] The trial court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. § 27–05–06. The appeals are timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

## II

[¶ 11] Mougey argues the trial court erred in granting summary judgment dismissing its claims for an easement to pump water across Kasparis' land.

### A

[¶ 12] Summary judgment is a procedural device for the prompt and expeditious disposition of a lawsuit without a trial if either party is entitled to judgment as a matter of law, if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving disputed facts would not alter the result. *Osterman–Levitt v. MedQuest, Inc.*, 513 N.W.2d 70, 72 (N.D.1994). In considering a motion for summary judgment, a court must view the evidence in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which reasonably can be drawn from the evidence. *Ellingson v. Knudson*, 498 N.W.2d 814, 817 (N.D.1993). Disputes of fact become questions of law if reasonable

persons can draw only one conclusion from the evidence. *Diegel v. City of West Fargo*, 546 N.W.2d 367, 370 (N.D.1996).

### B

[¶ 13] We initially consider Mougey's claims for an implied easement. We recently recognized two types of implied easements— an easement implied from a preexisting use and an easement by necessity. *Griffeth v. Eid, et al.*, 1998 ND 38, ¶ 5, 573 N.W.2d 829. The elements of an easement implied from a preexisting use are " 'unity of title of the dominant and servient tenement and a subsequent severance; apparent, permanent, and continuous use; and, the easement must be important or necessary for the enjoyment of the dominant tenement.' " *Griffeth* at ¶ 8 (quoting *Lutz v. Krauter*, 553 N.W.2d 749, 751 (N.D.1996)).

[¶ 14] In *Griffeth* at ¶ 12 (quoting 25 Am. Jur.2d *Easements and Licenses* § 36 (1996)), we outlined the elements of an easement by necessity:

> "A way of necessity or easement by necessity:
>
> " 'arises where there is a conveyance of a part of a tract of land of such nature and extent that either the part conveyed or the part retained is shut off from access to a road to the outer world by the land from which it is severed or by this land and the land of strangers.' "

[¶ 15] Here, the trial court said the transaction between Mougey and Kasparis clearly granted an easement which expired when the lease ended, and the parties intended to grant an easement for irrigation until the lease expired. The court decided there was no unity of title of the dominant and servient tenements and no subsequent severance of the tenements. The court thus ruled Mougey's claims for an easement implied from a preexisting use and an easement by necessity failed as a matter of law.

[¶ 16] Mougey asserts water rights appurtenant to real estate are a tenement for purposes of an implied easement, and because Kasparis granted Mougey water rights for Mougey's land, Kasparis also granted Mougey an implied easement to pump water

across Kasparis' land to utilize those water rights.

[¶ 17] A water permit may be transferred or assigned only upon approval of the State Engineer, N.D.C.C. § 61–04–15, and Mougey has cited no authority holding the transfer of water rights under a permit issued by a governmental entity constitutes the severance of a tenement for purposes of an implied easement. We need not decide this issue, however, because the parties' written easement clearly and unambiguously evidences the parties' intent the easement would terminate if Mougey no longer leased Kasparis' land.

[¶ 18] Several distinctions exist between an easement implied from a preexisting use and an easement by necessity. *Griffeth* at ¶ 12. Both types of implied easements, however, depend on the parties' intent as inferred from the facts and circumstances of their transaction. 25 Am.Jur.2d *Easements and License* §§ 23, 37 (1996). Neither type of easement will be implied where the parties did not intend an easement, and generally the express grant of an easement negates an implied easement of a similar character. 25 Am.Jur.2d *Easements and Licenses* §§ 23, 37 (1996). In *Lutz* at 753, we recognized a court will not imply the creation of an easement where the parties have expressed a contrary intent. *See Roll v. Keller*, 336 N.W.2d 648, 651 (N.D. 1983) (parties' intent from writing alone evidences implied easement conveyed with property).

[¶ 19] Although the existence of an implied easement ordinarily involves factual issues, *see Griffeth* at ¶¶ 6, 11, 13, the interpretation of a contract to determine its legal effect is a question of law. *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 433 (N.D.1995). Contracts are construed to give effect to the parties' mutual intent. *Lire* at 433–34. The parties' intent must be ascertained from the writing alone, if possible. *Lire* at 434. If a contract is unambiguous, extrinsic evidence is not admissible to contradict the written language. *Lire* at 434. Whether or not a contract is ambiguous is a question of law. *Lire* at 434.

[¶ 20] Here, the parties' written easement expressly said it terminated if Mougey no longer leased Kasparis' land. The parties' written lease specified a ten-year term. When read in conjunction with the parties' lease, the easement incorporated a specific expiration date—when the parties' lease terminated. The written lease and easement express an intent contrary to the creation of an easement implied from a preexisting use or an easement by necessity. *See Lutz* at 753 (court will not imply creation of easement where parties have expressed contrary intent). We conclude the parties' written lease and easement unambiguously evidence the parties' intent the easement would terminate if Mougey no longer leased Kasparis' land. Because the 1987 lease expired when Kasparis decided not to renew it at the end of the ten-year term, the easement ended then and the trial court did not err in granting summary judgment dismissal of Mougey's claims for an easement implied from a preexisting use and an easement by necessity.

## C

[¶ 21] Mougey asserts the trial court erred in granting summary judgment dismissing its eminent domain claim for an easement to pump water across Kasparis' land. Mougey argues N.D.C.C. § 61–01–04 authorizes "any person" to exercise eminent domain to acquire property for application of water to a beneficial use:

"*Eminent domain—Who may exercise.* The United States, or any person, corporation, limited liability company, or association may exercise the right of eminent domain to acquire for a public use any property or rights existing when found necessary for the application of water to beneficial uses, including the right to enlarge existing structures and use the same in common with the former owner. Any canal right of way so acquired shall be located so as to do the least damage to private or public property, consistent with proper and economical engineering construction. Such property or rights may be acquired in the manner provided in chapter 32–15 and the North Dakota Rules of Civil Procedure."

The trial court ruled N.D.C.C. § 61–01–04 was not applicable to acquire property rights for a private use and eminent domain proceedings were not appropriate for a private citizen as a matter of law.

[¶ 22] We begin our analysis of this issue with a brief historical description of the right to use water in North Dakota. The right to use water varies from state to state. States east of the Mississippi River, commonly called riparian states, allocate the right to use water based upon ownership of land bordering the water supply. 9 Powell on Real Property §§ 65.03[1], 65.06 (1998); 1 *Waters and Water Rights*, § 6.01 (1991). The riparian doctrine allows a riparian landowner to make reasonable use of waters flowing through or by the landowner's property as long as the use does not adversely affect neighboring lands. Beck and Hart, *The Nature and Extent of Rights in Water in North Dakota*, 51 N.D.L.Rev. 249, 252–53 (1974).

[¶ 23] States west of the Mississippi River, commonly called appropriation states, allocate the right to use water according to an appropriation model in which the right is secured by actual application of the water to a beneficial use. 9 Powell at §§ 65.03[1], 65.07; 2 *Waters and Water Rights* at § 12.01. The appropriation doctrine allows a person needing water for a beneficial use to divert the water for the use and acquire a vested right to continue the use regardless of whether the appropriator owns land bordering the water supply. Beck and Hart at 256. Under the appropriation doctrine, priority in time plus a beneficial use, rather than location of the land, governs the use of the water. Beck and Hart at 257.

[¶ 24] In some western states, including North Dakota, the right to use water has been allocated in a combination of ways and both the riparian and appropriation doctrines have been recognized in varying degrees. 9 Powell at §§ 65.04[1], 65.07[1]; 1 *Waters and Water Rights* at § 8.02(c). *See generally* Beck and Hart. In 1866, the Dakota Territorial Legislature adopted a statute giving a riparian landowner ownership of water flowing over the landowner's land. Terr. Dak. Civ.Code § 256 (1866). *See* Beck and Hart at 251–52; 1 *Waters and Water Rights* at § 8.02(c). According to Beck and Hart at 253–56, the appropriation doctrine was first introduced in the Dakota Territory in 1881 [2] and was reinforced by enactment of a 1905 Irrigation Code.1905 N.D. Sess. Laws ch. 34. Those appropriation provisions have evolved into a comprehensive water code embracing the appropriation doctrine, *see* N.D.C.C. ch. 61–01 (General Provisions) and 61–04 (Appropriation of Water), and repealing the riparian doctrine for use of water. 1963 N.D. Sess. Laws ch. 419, § 7 (repealing N.D.C.C. § 47–01–13). *See* Beck and Hart at 260; 1 *Waters and Water Rights* at § 8.02(c). *See also Baeth v. Hoisveen*, 157 N.W.2d 728, 733 (N.D.1968) (upholding constitutionality of N.D.C.C. § 61–01–01, but recognizing vested riparian rights which were contingent upon application of water to a beneficial use).

[¶ 25] Section 61–01–04, N.D.C.C., was adopted in 1905 as part of the Irrigation Code, 1905 N.D. Sess. Laws ch. 34, and its plain language authorizes "any person" to exercise the right of eminent domain under certain conditions. Statutes in other western states have authorized private individuals to condemn land necessary for irrigation of

---

**2.** Laws of Territory of Dakota ch. 142, §§ 1, 2 (1881) provided:

" § 1. PARTY HOLDING LAND SHALL HAVE RIGHT TO WATER. That any person or persons, corporation or company, who may have or hold a title or possessory right or title to any mineral or agricultural lands within the limits of this Territory, shall be entitled to the usual enjoyment of the waters of the streams or creeks in said Territory for mining, milling, agricultural or domestic purposes; *Provided:* That the right to such use shall not interfere with any prior right or claim to such waters when the law has been complied with in doing the necessary work.

" § 2. MAY CONDUCT WATER FROM REMOTE STREAM. That when any person or persons, corporation or company, owning or holding land as provided in section 1 of this act, shall have no available water facilities upon the same, or whenever such lands are too far removed from any stream or creek to so use the waters thereof, as aforesaid, such person or persons, corporation or company shall have the right of way through and over any tract or piece of land for the purpose of conducting and conveying said water by means of ditches, dykes, flumes or canals, for the purpose aforesaid."

farmland. *See Clark v. Nash*, 198 U.S. 361, 370, 25 S.Ct. 676, 49 L.Ed. 1085 (1905); *Application of Bubb*, 200 Colo. 21, 610 P.2d 1343, 1346 (1980); *White v. Marty*, 97 Idaho 85, 540 P.2d 270, 271 (1975), *overruled on other grounds by Carr v. Magistrate Court of First Jud. Dist.*, 108 Idaho 546, 700 P.2d 949, 952 (1985). *See also* 3 *Waters and Water Rights* at § 26.04.[3] In *Nash* at 370, 25 S.Ct. 676, the United States Supreme Court concluded Utah was not prohibited from enacting a statute to allow a private individual to use eminent domain to condemn a right of way across a neighbor's land for irrigation of the private individual's land. *See also* 26 Am.Jur.2d *Eminent Domain* § 24 (1996) (legislature may constitutionally delegate the power of eminent domain to individuals). The Supreme Court held, under the facts of the case, the proposed use was a public use even though the taking allowed access to water for a private individual. *Nash* at 369–70, 25 S.Ct. 676.

[¶ 26] To the extent the trial court ruled a private person was not authorized to exercise the power of eminent domain under N.D.C.C. § 61–01–04, we conclude the court erred. However, this conclusion does not end our inquiry, because N.D.C.C. § 61–01–04 authorizes any person to use the power of eminent domain under the conditions specified therein, i.e., "to acquire for a public use any property or rights existing when found necessary for the application of water to beneficial uses." *See also* N.D. Const. Art. I, § 16 ("Private property shall not be taken or damaged for public use without just compensation"). Here, the trial court ruled Mougey's proposed use was not a public use.

[¶ 27] In *City of Jamestown v. Leevers Supermarkets, Inc.*, 552 N.W.2d 365, 369 (N.D.1996), we said in condemnation proceedings a court can always inquire into the nature of a proposed use to decide if it is a "public use." In *Leevers* at 369, we concluded a municipality's stimulation of commercial growth and removal of economic stagnation were objectives satisfying public use.

[¶ 28] In *Nash* at 369–70, 25 S.Ct. 676, the Supreme Court held a private individual's widening of a ditch to facilitate irrigation of his land constituted a public use under the circumstances of the case. The Court explained:

"The rights of a riparian owner in and to the use of the water flowing by his land are not the same in the arid and mountainous states of the West that they are in the states of the East. These rights have been altered by many of the Western states by their constitutions and laws, because of the totally different circumstances in which their inhabitants are placed, from those that exist in the states of the East, and such alterations have been made for the very purpose of thereby contributing to the growth and prosperity of those states, arising from mining and the cultivation of an otherwise valueless soil, by means of irrigation. This court must recognize the difference of climate and soil, which render necessary these different laws in the states so situated."

*Nash* at 370, 25 S.Ct. 676.

[¶ 29] Under *Nash*, local conditions of each state play an important role in deciding if a proposed taking to facilitate use of water is for a public use. *See* 3 *Waters and Water Rights* at § 26.04(d). Other western states have concluded the use of water for irrigation of farmland is a public use. *See Fallbrook Irrig. Dist. v. Bradley*, 164 U.S. 112, 164, 17 S.Ct. 56, 41 L.Ed. 369 (1896) (applying California law); *Canyon View Irrig. Co. v. Twin Falls Canal Co.*, 101 Idaho 604, 619 P.2d 122, 125 (1980), *cert. denied*, 451 U.S. 912, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981); *McTaggart v. Montana Power Co.*, 184 Mont. 329, 602 P.2d 992, 995–96 (1979). *See also* 3 *Waters and Water Rights* at § 26.04(d).

[¶ 30] North Dakota law provides "[a]ll flowing streams and natural watercourses shall forever remain the property of the state for mining, irrigating and manufacturing pur-

---

**3.** The 1991 edition of *Waters and Water Rights* acknowledges an earlier edition of the treatise, 4 *Waters and Water Rights*, chapter 16 (1970), as the "premier effort" on eminent domain and water rights. Both editions of this treatise recog-

nize private condemnation of lands where the project represents an important public good. *See* 4 *Waters and Water Rights* § 303.1 (1970) *and* 3 *Waters and Water Rights* § 26.04 (1991).

poses." N.D. Const. Art. XI, § 3. Under N.D.C.C. § 61–01–01, all waters in flowing streams are subject to appropriation for beneficial use, and the right to use those waters must be acquired under N.D.C.C. ch. 61–04. In upholding the constitutionality of N.D.C.C. § 61–01–01, in *Baeth* at 733, this Court recognized:

> "North Dakota is, in part, a semi-arid State. Therefore, concern for the general welfare could well require that the water resources of the State be put to beneficial use to the fullest extent of which they are capable, and that the waste or unreasonable method of use of water be prevented, and that the conservation of such water be exercised with a view to the reasonable and beneficial use thereof in the interests of the people and the public welfare."

[¶ 31] Under N.D.C.C. § 61–04–01.2, the right to use water can be acquired for only a beneficial use. Section 61–04–01.1(4), N.D.C.C., defines beneficial use as a use of water for a purpose consistent with the best interest of the people of the State. Section 61–04–02, N.D.C.C., requires a permit for the beneficial use of water. *See also* N.D.C.C. §§ 61–04–06.2 (terms of conditional permit); 61–04–09 (perfected permit). Section 61–04–06, N.D.C.C., outlines the criteria for issuing a water permit and requires a beneficial use and appropriation in the public interest. *See* N.D.C.C. § 61–02–01 ("conservation, management, development and control of waters in this state ... are affected with and concern a public purpose"). Under N.D.C.C. § 61–04–06.1(4) irrigation is recognized as a priority for appropriation of water. *See* N.D.C.C. § 61–02–16 (preference to individual farmer when planning or constructing irrigation project).

[¶ 32] Irrigation of farmland under a perfected water permit issued by the State Engineer is a beneficial use of water consistent with the best interests of the people of North Dakota, which we conclude satisfies the "public use" requirement of N.D.C.C. § 61–01–04. *See Nash* at 369–70, 25 S.Ct. 676 (private individual's taking to facilitate irrigation of farmland is public use); *McTaggart*, 602 P.2d at 995–96 (efficient use of water and irrigation of farmland is public

use); *Canyon View*, 619 P.2d at 125 (irrigation of arid lands is well recognized public use). We hold irrigation of farmland under a perfected water permit satisfies the public use requirement of N.D.C.C. § 61–01–04. We therefore reverse the summary judgment dismissal of Mougey's eminent domain claim and remand for further proceedings on the claim, including whether Mougey's acquisition of an easement is "necessary for application of the water to beneficial uses" and, if so, a determination of just compensation. *See generally* N.D.C.C. ch. 32–15.

### III

### A

[¶ 33] In their cross-appeal, Kasparis assert the trial court erred in partitioning the irrigation equipment. They argue the buried irrigation pipe and wire were an interest in real property under N.D.C.C. § 47–06–04, and were owned by them upon termination of the lease. The parties' written easement, however, identifies the parties' ownership rights regarding the irrigation equipment and constitutes an agreement regarding the property within the meaning of N.D.C.C. § 47–06–04. The trial court found Mougey did not intend to transfer ownership of the irrigation system to Kasparis, except as described in the easement. The court's finding is not clearly erroneous under N.D.R.Civ.P. 52(a), and subject to the eminent domain issue, the court did not err in partitioning the irrigation system to effectuate the parties' intent.

### B

[¶ 34] In deciding Mougey's claim for reformation of the 1987 lease, Kasparis argue the trial court erred in considering extrinsic evidence contradicting the terms of the parties' written lease. The court found Mougey's rent payments for Kasparis' loan at Citizens State Bank were intended to be for only the actual cost of the irrigation system. The court found Mougey was led to believe Kasparis' loan at Citizens State Bank was only for the irrigation equipment, but the actual cost of the irrigation system was $52,661, and the loan was for $58,000. The court thus

concluded Mougey's payments for Kasparis' loan resulted in an overcharge for rent.

[¶ 35] A party seeking reformation must establish the right to reformation by clear and convincing evidence. *City of Fargo v. D.T.L. Properties,* 1997 ND 109, ¶ 15, 564 N.W.2d 274. In a reformation action, extrinsic evidence is admissible to show a mutual mistake and to correct the mistake. *Ell v. Ell,* 295 N.W.2d 143, 149 (N.D.1980).

[¶ 36] Here, Mougey presented extrinsic evidence establishing the parties intended Mougey's rent payments for Kasparis' loan with Citizen's State Bank were for only the amount Kasparis financed for the irrigation equipment and Mougey actually paid more than that amount. Although Kasparis argue the trial court did not require clear and convincing evidence to reform the lease, the court's memorandum opinion said the evidence "clearly" established the parties' intent. A memorandum opinion may be used to explain a court's findings. *Peterson Mech., Inc. v. Nereson,* 466 N.W.2d 568, 572 (N.D.1991). We conclude the court's findings are not clearly erroneous, and the court did not err in reforming the lease to correct Mougey's overpayments.

### C

[¶ 37] Kasparis argue Mougey's reformation claim is barred by the statute of limitations. The trial court found the statute of limitations did not bar Mougey's reformation claim, because there was no evidence Mougey knew, or should have known, it was being overcharged until 1993, which was within the limitation period.

[¶ 38] The court's finding about when Mougey became aware of the overcharge is not clearly erroneous under N.D.R.Civ.P. 52(a), and we affirm the court's decision Mougey's reformation claim was not barred by the statute of limitations. *See Diocese of Bismarck Trust v. Ramada,* 553 N.W.2d 760, 766 (N.D.1996) (10–year statute of limitations applies to lease affecting interest in real property, and accrual of cause of action is date of discovery of mistake, not date of lease).

### IV

[¶ 39] We reverse the summary judgment dismissing Mougey's eminent domain claim and remand for further proceedings on it, and we affirm the remainder of the judgment.

[¶ 40] VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.

