1999 ND 142

**PRAIRIEVIEW NURSING HOME, Appellant,**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 980319.

Supreme Court of North Dakota.

July 20, 1999.

Monte L. Rogneby, Kapsner & Oliver, Bismarck, for appellant.

Candace A. Prigge, Assistant Attorney General, Attorney General's Office, Bismarck, for appellee.

MARING, Justice.

[¶ 1] Prairieview Nursing Home (Prairieview) appealed from a judgment affirming a decision by the North Dakota Department of Human Services which established the nursing home's medicaid reimbursement rates for 1997. We conclude the Department did not err in deciding a 1967 "lease and option agreement" was a lease for purposes of establishing Prairieview's 1997 rates. We affirm.

[¶ 2] Prairieview Healthcare, Inc., (Healthcare) is the current owner and operator of Prairieview. At issue in this appeal is the Department's establishment of Prairieview's medicaid reimbursement rates for 1997, which requires a determination of Healthcare's cost basis and allowable depreciation for the nursing home. Healthcare acquired the nursing home from Prairieview Homes, Inc., in 1996. Under N.D. Admin. Code § 75–02–06–03(6)(a)(3),[1] Healthcare's cost basis and al-

---

1. Section 75–02–06–03(6)(a)(3), N.D. Admin. Code, provides:

6. Basis for depreciation of assets acquired as an ongoing operation. Determination of the cost basis of a facility and its depreciable assets of an ongoing operation depends on whether or not the transaction is a bona fide sale. Should the issue arise, the purchaser has the burden of proving that the transaction was a bona fide sale. Purchases where the buyer and seller are related organizations are not bona fide.
a. The cost basis of a facility and its depreciable assets acquired in a bona fide sale after July 1, 1985, is limited to the lowest of:
. . . .
(3) The seller's cost basis, increased by one-half of the increase in the consumer price index for all urban consumers, United States city average, all items, from

lowable depreciation for the nursing home depends on Prairieview Homes' "date of acquisition" of the facility.

[¶ 3] In 1967 Prairieview Homes sought to acquire and operate Prairieview, a partially completed nursing home in Underwood, North Dakota. The Small Business Administration refused to loan money directly to Prairieview Homes, but agreed to finance the transaction if it was structured with a development company as the borrowing entity and Prairieview Homes as the facility operator. North Dakota Health Care, Inc. (North Dakota Health) was incorporated as the development company, and the SBA loaned it $349,000 to acquire and complete construction of the nursing home. The loan was for a twenty-five year term with monthly payments of $2,171.

[¶ 4] North Dakota Health's "disclosure" statement acknowledged it had entered into a "lease and option agreement" with Prairieview Homes. Under the "lease and option agreement," North Dakota Health leased the nursing home to Prairieview Homes for twenty-five years with rent set at $2,200 per month, plus 75 percent of Prairieview Homes' net earnings after income taxes and rental payments, subject to a cap of 7 percent per annum of North Dakota Health's total capital stock investment. The lease granted Prairieview Homes an option to purchase the facility from North Dakota Health for the unpaid balance due on the SBA loan, plus the actual amount of capital invested in North Dakota Health by its stockholders. Under the agreement, if Prairieview Homes exercised the option to purchase it would receive a credit on the purchase price for 35 percent of its rental payments.

[¶ 5] Prairieview Homes operated the facility under the "lease and option agreement" until it formally exercised the option to purchase in 1983. Healthcare acquired the nursing home from Prairieview Homes in 1996.

the date of acquisition by the seller to the date of acquisition by the buyer, less ac-

[¶ 6] In 1996, the Department issued Prairieview's medicaid reimbursement desk rates for 1997. Prairieview requested reconsideration, claiming the Department erred in calculating Healthcare's cost basis and allowable depreciation based on a 1983 date of acquisition by Prairieview Homes. After a hearing, an administrative law judge recommended treating the 1967 transaction between North Dakota Health and Prairieview Homes as a bona fide lease agreement, and using 1983 as Prairieview Homes' date of acquisition of the facility. The Department adopted the ALJ's recommendation. The district court affirmed the Department's decision, and Prairieview appealed.

[¶ 7] When a Department decision is appealed to the district court and then to this Court, we review the Department's determination, not the district court's ruling. *Americana Healthcare Ctr. v. North Dakota Dep't of Human Servs.*, 540 N.W.2d 151, 153 (N.D.1995). Under N.D.C.C. §§ 28–32–21 and 28–32–19, we consider whether the Department's findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, and its decision is in accordance with the law. *Americana*, at 153. We do not make independent findings of fact or substitute our judgment for the Department's decision; instead, our review is limited to whether a reasoning mind reasonably could have decided the Department's findings were proven by the weight of the evidence from the entire record. *Dickinson Nursing Ctr. v. North Dakota Dep't of Human Servs.*, 353 N.W.2d 754, 757 (N.D. 1984). The Department's decision on a question of law is fully reviewable by this Court. *Id.* The Department's expertise in the complex area of medicaid reimbursement rates is entitled to deference. *See*

cumulated depreciation recognized for cost reporting purposes; ...

*Americana,* at 153; *Dickinson Nursing Ctr.,* at 758.

■ [¶ 8] Prairieview argues the Department erred in deciding Prairieview Homes acquired the facility in 1983 when it exercised the option to purchase. Prairieview asserts Prairieview Homes acquired the facility in 1967 in a transaction denominated as a lease with option to purchase, but which, as a matter of law, was actually an acquisition with a financing mechanism. Prairieview argues the parties clearly intended a conditional sale and not a true lease, because the duration and amount of payments under the lease and under the SBA loan were similar and the purchase price under the option was "nominal." Prairieview Homes' "date of acquisition" of the nursing home under N.D. Admin. Code § 75–02–06–03(6)(a)(3) depends on the nature of the 1967 "lease and option agreement."

■ [¶ 9] Section 47–16–01, N.D.C.C., defines a real property lease as a contract in which one entity gives another entity temporary possession and use of real property for reward and the latter agrees to return possession to the former at a future time. *See Lee v. North Dakota Park Serv.,* 262 N.W.2d 467, 470 (N.D.1977); *Huus v. Ringo,* 76 N.D. 763, 772, 39 N.W.2d 505, 511 (1949). *See also* Black's Law Dictionary 889 (6th ed.1990) (defining "lease" as an agreement under which owner gives up possession and use of property for valuable consideration and for definite term and at end of term owner has absolute right to retake, control, and use property). The law of leases is a blend of property and contractual doctrines, *see Signal Management Corp. v. Lamb,* 541 N.W.2d 449, 453 (N.D.1995), and a real property lease is generally considered a contract and a conveyance of a leasehold interest. *See Diocese of Bismarck Trust v. Ramada, Inc.,* 553 N.W.2d 760, 766 (N.D.1996).

■ [¶ 10] Leases are subject to general rules of contract construction.

*Agra–By–Products, Inc. v. Agway, Inc.,* 347 N.W.2d 142, 146 (N.D.1984). If the parties' intent can be ascertained from a written contract alone, the interpretation of the contract to determine its legal effect is a question of law. *See, e.g., Mougey Farms v. Kaspari,* 1998 ND 118, ¶ 19, 579 N.W.2d 583. The object of interpreting a contract is to give effect to the parties' mutual intent when the contract was executed. N.D.C.C. § 9–07–03; *Pamida, Inc. v. Meide,* 526 N.W.2d 487, 490 (N.D.1995); *Agra–By–Products,* at 146. If a written contract is unambiguous, extrinsic evidence is not admissible to contradict the written language. *Mougey Farms,* at ¶ 19. A contract is ambiguous when rational arguments can be made to support contrary meanings of the language in question. *Pamida,* at 490. Whether or not a contract is ambiguous is a question of law. *Mougey Farms,* at ¶ 19.

[¶ 11] In other contexts, we have said the parties' intent determines the true nature of their transaction. *See Estate of Zubicki,* 537 N.W.2d 559, 562–63 (N.D. 1995) (holding sale and leaseback agreement was intended to create security interest and was not a true lease); *Wallwork Lease and Rental Co. v. JNJ Inv., Inc.,* 303 N.W.2d 545, 546–47 (N.D.1981) (holding agreement was lease and not installment sale contract); *State Bank v. All–American Sub, Inc.,* 289 N.W.2d 772, 776 (N.D.1980) (holding agreement was intended as security interest and was not lease).

[¶ 12] In *All–American Sub,* 289 N.W.2d at 775–78, this Court considered whether a "lease" was intended as a security interest under N.D.C.C. § 41–01–11(37) (U.C.C. § 1–201(37)). We concluded the parties' denomination of the agreement as a "lease" was not conclusive proof the parties intended the transaction to be a lease, and we considered other language within the four corners of the document in concluding, as a matter of law, the parties intended the lease to be a security interest. *All–American Sub,* at 776.

[¶ 13] The 1967 agreement between North Dakota Health and Prairieview Homes was styled as a "lease and option agreement." That denomination is not conclusive. *See All–American Sub,* 289 N.W.2d at 776. The lease and option said it included the entire agreement of the parties and they had made no promises or representations which were not set forth in the agreement. As in *All–American Sub,* we consider the language within the four corners of the instrument to ascertain the parties' intent.

[¶ 14] Although the duration of the lease and the amount of rental payments were similar to the terms of the SBA loan with North Dakota Health, there is no dispute the SBA required the loan to be structured with North Dakota Health designated as the borrower and Prairieview Homes designated as the operator of the nursing home. North Dakota Health "lease[d]" the premises to Prairieview Homes for twenty-five years. The lease said it was subject to termination or forfeiture under other provisions, including immediate termination if Prairieview Homes went into bankruptcy. The lease said fixtures furnished by North Dakota Health were to remain on the premises upon termination of the lease and required Prairieview Homes to remove its fixtures upon termination. The lease also granted North Dakota Health the right to enter and inspect the premises. Those provisions are indicative of an arrangement in which North Dakota Health gave Prairieview Homes temporary possession and use of the property and Prairieview Homes agreed to return possession of the property to North Dakota Health at a future time.

[¶ 15] The lease and option was structured to allow Prairieview Homes to acquire title to the property if it exercised the option to purchase. Contrary to Prairieview's argument, however, the plain language of the lease and option did not automatically transfer title to Prairieview Homes at the end of the lease. Rather, the lease unambiguously specified a month-to-month "holdover period" after the expiration of the term and required Prairieview Homes to exercise the option to purchase by giving North Dakota Health written notice. Under North Dakota law, an optionee must strictly comply with the contractual requirements for exercising an option to purchase. *Fries v. Fries,* 470 N.W.2d 232, 234 (N.D.1991). The agreement unambiguously required North Dakota Health to transfer title by warranty deed if Prairieview Homes exercised the option. The lease unambiguously indicates North Dakota Health transferred temporary possession of the facility to Prairieview Homes unless and until the option was exercised.

[¶ 16] Prairieview's reliance on generally accepted accounting principles to support its argument is misplaced. Although Prairieview presented evidence the 1967 transaction could be treated as an acquisition with a financing mechanism under generally accepted accounting principles, those accounting principles do not vitiate the plain and unambiguous language granting Prairieview Homes a leasehold interest with an option to purchase the facility. The Department's ratesetting procedures prevail if conflicts occur between ratesetting procedures and generally accepted accounting principles. N.D. Admin. Code § 75–02–06–02(2)(a).[2] Prairieview's medicaid reimbursement rates depend upon the Department's determination of Prairieview Homes' "date of acquisition" of the facility under N.D. Admin.

---

**2.** Section 75–02–06–02(2)(a), N.D. Admin. Code, provides:

   a. The accrual basis of accounting, in accordance with generally accepted accounting principles, must be used for cost reporting purposes. A facility may maintain its accounting records on a cash basis during the year, but adjustments must be made to reflect proper accrual accounting procedures at yearend and when subsequently reported. Ratesetting procedures must prevail if conflicts occur between ratesetting procedures and generally accepted accounting principles.

Code § 75–02–06–03(6)(a)(3), and we give appreciable deference to the Department's expertise in the complex area of medicaid reimbursement. *See Americana,* 540 N.W.2d at 153; *Dickinson Nursing Ctr.,* 353 N.W.2d at 758.

[¶ 17] Here, the plain and unambiguous terms and conditions of the 1967 "lease and option agreement" establish, as a matter of law, the parties intended the 1967 transaction to be a lease of the facility with an option to purchase. Although the parties may have intended the arrangement to enable Prairieview Homes to ultimately acquire the facility, the 1967 transaction did not accomplish that result. Instead, it unambiguously effectuated a lease with an option to purchase the property at a later date. We decline to look beyond the plain language of the lease and option agreement, and the Department's determination of the "date of acquisition." We conclude the Department did not err in deciding the 1967 transaction was a lease with an option to subsequently purchase the facility and Prairieview Home's date of acquisition of the facility was 1983.

[¶ 18] We therefore affirm the district court judgment affirming the Department's decision.

[¶ 19] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, J., and RONALD L. HILDEN and JOHN C. MCCLINTOCK, JR., D.JJ., concur.

[¶ 20] JOHN C. MCCLINTOCK, JR. and RONALD L. HILDEN, D.JJ., sitting in place of KAPSNER and NEUMANN, JJ., disqualified.

