Janet BASHUS, Appellant,

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES and Burleigh County Social Service Board, Appellees.**

Civ. No. 940033.

Supreme Court of North Dakota.

July 18, 1994.

David Boeck, of Legal Assistance of North Dakota, Bismarck, for appellant.

Carmen G. Miller, Asst. Atty. Gen., Bismarck, for appellees.

SANDSTROM, Justice.

Janet Bashus appeals from a district court judgment dismissing her appeal from an April 21, 1993 "decision" of the Department of Human Services. We reverse the dismissal and remand for the Department to file the record of the proceedings before it.

I

In August 1991, Bashus' eight-year-old daughter, Ashley, became ill with what was eventually diagnosed as a malignant brain tumor. Bashus quit her job and began full-time care for Ashley and her three other children. Bashus applied for and received Aid to Families with Dependent Children (AFDC) benefits and food stamps.

Bashus also received charitable contributions in a local bank account to help defray Ashley's medical expenses. The exact amount of the charitable contributions is not clear; however, the record on appeal includes an August 3, 1992 AFDC "overpayment determination notice" from Burleigh County Social Services, which said:

"IT HAS BEEN DETERMINED THAT YOU HAVE RECEIVED AN OVERPAYMENT IN YOUR AFDC GRANT(S) DURING THE PERIOD OF DECEMBER THRU JUNE 1992 IN THE AMOUNT OF $3,167.00. THE OVERPAYMENT IS A RESULT OF YOU HAVING A BANK ACCOUNT WITH OVER $2000 IN IT AND NOT REPORTING IT TO OUR OFFICE.

"YOUR AFDC GRANT(S) WILL BE REDUCED EACH MONTH UNTIL THIS OVERPAYMENT IS RECOVERED."

The next document in the record on appeal is a "Findings & Decision" issued by the Department on December 9, 1992, which stated Bashus had signed a "waiver of hearing" and had admitted an intentional violation of the food stamp program by making false or misleading statements about her financial circumstances. The Department determined Bashus was ineligible for food stamps for six months. *See* 7 C.F.R. § 273.-16(b) (six month period of ineligibility for first intentional violation of food stamp program).

Although the record on appeal does not include any other intervening documents, on April 21, 1993, the executive director of the Department wrote Bashus a letter which said:

"Thank you for your recent letter to me regarding your AFDC and Food Stamp case. I contacted the Department's Appeal Supervisor and instructed her to meet with program staff in reviewing your case.

"The results of that review are as follows:

"1. The food stamp overpayment notice was issued in error. Your household was categorically eligible for food stamps since Ashley was on SSI. That action will be reversed and any recoupment dollars will be returned to you.

"2. The AFDC overpayment notice will stand because you failed to report checking account assets. You claim that this was a special fund set up for Ashley's medical expenses, but the fund monies were used for the purchase of a motor vehicle.

"3. The food stamp intentional program violation decision cannot be administratively changed based upon federal regulation. You must present your argument directly to District Court concerning this issue."

Bashus appealed to the district court from the April 21, 1993 "decision." The Department moved to dismiss Bashus' appeal, contending the April 21 letter was not an appealable order and she had failed to file timely appeals from the August 3, 1992 and the December 9, 1992 decisions. Bashus resisted the Department's motion to dismiss and requested the Department to file in the district court the record of the administrative proceedings in her case. The Department responded there was no record of administrative proceedings, because Bashus had failed to file timely appeals after the August 3 and the December 9 decisions. The district court granted the Department's motion to dismiss, concluding the April 21 letter was not an appealable order and Bashus had not filed timely appeals from the earlier decisions. Bashus appealed to this Court.

## II

When an order of the Department is appealed to the district court and then to this Court, we review the Department's order and look at the record compiled before the Department. *Hinschberger v. Griggs County Social Service Board*, 499 N.W.2d 876, 879 (N.D.1993). Under N.D.C.C. §§ 28-32-21 and 28-32-19, we affirm the Department's order if its findings of fact are supported by a preponderance of the evidence, its conclusions of law are supported by its findings of fact, its decision is supported by its conclusions of law, and its decision is in accordance with the law. *Hinschberger.*

## III

The primary issue in this case is whether the April 21 letter is appealable. Section 28-32-15, N.D.C.C., authorizes appeals from "final orders" of administrative agencies within thirty days after notice of the order has been given. *See Westman v. North Dakota Workers Compensation Bureau*, 459 N.W.2d 540, 541-43 (N.D.1990).

Section 28–32–01(7), N.D.C.C., defines "order" as "any agency action of particular applicability that determines the legal rights, duties, privileges, immunities, or other legal interests of one or more specific persons, but does not mean an executive order issued by the governor." The appealability issue involves whether the April 21 letter is a "final order" within the meaning of those statutes. Our analysis of this issue depends on the substance of the April 21 letter and the status of the administrative proceedings prior to the letter. Our analysis, however, is restricted by the lack of a record of the administrative proceedings prior to the letter.

Section 28–32–12, N.D.C.C., requires an administrative agency to "make a record of all ... documents, exhibits, and other evidence presented at any ... administrative proceeding heard by it." When an order of an administrative agency is appealed to the district court, the agency "shall prepare and file in the office of the clerk of the district court in which the appeal is pending the original or a certified copy of the entire record of proceedings before the agency, or an abstract of the record as may be agreed upon and stipulated by the parties." N.D.C.C. § 28–32–17(2).

When Bashus appealed to the district court from the April 21 letter, N.D.C.C. § 28–32–17(4)[1] provided:

"4. The agency record of the proceedings, as applicable, must consist of only the following:

"a. The complaint, answer, and other initial pleadings or documents.

"b. Notices of all proceedings.

"c. Any prehearing notices, transcripts, documents, or orders.

"d. Any motions, pleadings, briefs, petitions, requests, and intermediate rulings.

"e. A statement of matters officially noticed.

"f. Offers of proof and objections and rulings thereon.

"g. Proposed findings, requested orders, and exceptions.

"h. The transcript of the hearing prepared for the person presiding at the hearing, including all testimony taken, and any written statements, exhibits, reports, memoranda, documents, or other information or evidence considered before final disposition of proceedings.

"i. Any recommended or proposed order, recommended or proposed findings of fact and conclusions of law, final order, final findings of fact and conclusions of law, or findings of fact and conclusions of law or orders on consideration.

"j. Any information considered pursuant to section 28–32–07.

"k. Matters placed on the record after an ex parte communication.

"l. Any other document that the agency believes is relevant to the appeal.

"m. Any other document that is not privileged and which is a public record that the appellant requests the agency to include in the record, if relevant to the appeal."

Under those statutes, the "record of proceedings before the agency" consists of a wide range of documents, and, contrary to the Department's argument, is not limited to documents presented as a result of a formal hearing. Rather, the "agency record of proceedings" may include information not presented at a formal hearing. N.D.C.C. §§ 28–32–17(4)(j); 28–32–07. Further, under N.D.C.C. § 28–32–17(4)(m) Bashus may have the Department include in the record on appeal "any other [relevant] document" which is a public record.

Here, the sparse appellate record for the proceedings before the County Social Service Board and the Department clouds the status of the administrative proceedings prior to Bashus' appeal from the April 21 letter. In support of its motion to dismiss, the Department filed an affidavit of an administrative secretary which stated she was "familiar with the documents on file concerning Janet Bashus." Attached to the affidavit was a copy of the August 3, 1992 AFDC "overpayment

---

1. Section 28–32–17(4), N.D.C.C., was amended effective August 1, 1993 to delete paragraphs (*l*) and (m). 1993 N.D.Sess.Laws. Ch. 329, § 5.

determination notice" and a copy of the December 9, 1992 "Findings & Decision" of an intentional violation of the food stamp program. The record on appeal also includes the executive director's April 21 letter "reviewing" Bashus' AFDC and food stamp case. Although N.D.C.C. § 28–32–17(2) requires the agency to file with the district court "the entire record of proceedings before the agency," none of the other "documents on file concerning Janet Bashus" were presented to the district court.

The Department's "fair hearing" procedures require a dissatisfied AFDC recipient to request a fair hearing within thirty days after county agency action has resulted in the suspension, reduction, discontinuance, or termination of assistance. N.D.A.C. §§ 75–01–03–03(1)(b) and 75–01–03–06. The "county agency or regional office must explain the right to request a fair hearing ... to every applicant at the time of the applicant's application for assistance, and thereafter at any time when further county action respecting aid or services is taken." N.D.A.C. § 75–01–03–07(1). Also, "[w]ritten notice of the right to a fair hearing shall be included in every notification to the applicant or recipient of the granting, denial, decrease, discontinuance, suspension or increase in aid, or request for repayment, or where there is a change in a prior determination regarding aid." N.D.A.C. § 75–01–03–07(2).

The copy of the August 3, 1992 AFDC "overpayment determination notice" in this record does not say the Burleigh County Social Service Board provided Bashus with "[w]ritten notice of the right to a fair hearing" as required by N.D.A.C. § 75–01–03–07(2).[2] In addition, the administrative secretary's affidavit indicates the Department received a "protest" from Bashus on December 14, 1992, in response to the August 3, 1992 AFDC "overpayment determination notice." The "protest," however, is not part of this record. The "[w]ritten notice of [Bashus']

right to a fair hearing" and the "protest" are part of "the entire record of proceedings before the agency" under N.D.C.C. § 28–32–17(2) and may be relevant to determine the status of Bashus' appeal.

The December 9 food stamp decision states "[t]he evidence of record in this proceeding has been considered and appraised," and says Bashus "signed a waiver of hearing, admitting the facts described in the 'Notice of Suspected Intentional Program Violation' and understanding that a six month disqualification will be imposed as a result, without further hearing." The decision further states "[t]he information provided by the county social service board has been reviewed and it is found that the acts described on the 'Notice of Suspected Intentional Program Violation' involved intentional misrepresentation or concealment of information considered relevant to the county social service board in evaluating the household's eligibility and coupon allotment." However, the "evidence of record," the "signed waiver of hearing," the " 'Notice of Suspected Intentional Program Violation,' " and the "information provided by the county social service board" may be relevant to the status of Bashus' appeal and are part of "the entire record of proceedings before the agency." Those documents, however, were not filed with the district court.

This record also does not include the letter from Bashus which precipitated the executive director's April 21, 1993 letter. The April 21 letter states the executive director received a letter from Bashus, and a "review" of her case had occurred. According to the executive director, the "results of that review" were: (1) the food stamp overpayment was issued in error and was reversed with an appropriate recoupment; (2) the AFDC overpayment notice was upheld because Bashus had failed to report checking account assets; and (3) the intentional food stamp violation could not be administratively changed be-

---

**2.** When an agency has failed to comply with required procedures, this Court has held a claimant was entitled to the benefits sought. *Beckler v. North Dakota Workers Compensation Bureau,* 418 N.W.2d 770, 775 (N.D.1988). Here, the record on appeal does not establish whether the Department provided Bashus with "[w]ritten notice of the right to a fair hearing." In other contexts, this Court has said the party failing to

procure a record of proceedings for appeal assumes the consequences and the risks of the failure. *E.g., Rosendahl v. Rosendahl,* 470 N.W.2d 230, 231 (N.D.1991). In this case, the Department has a statutory duty to provide a record of the proceedings before the agency showing it gave Bashus "[w]ritten notice of the right to a fair hearing."

cause of a federal regulation,[3] but Bashus' argument could be presented directly to the district court. The substance of the April 21 letter indicates some "review"[4] of both the AFDC and the food stamp decisions.

Although an agency's gratuitous response to a citizen inquiry does not constitute an appealable "final order" under N.D.C.C. § 28–32–15, without "the entire record of proceedings before the agency" prior to the executive director's April 21 letter, we cannot say the letter demonstrates it is merely a gratuitous response to a citizen inquiry after the expiration of the time to request a fair hearing, or the time for appeal of the prior decisions. The April 21 letter suggests more than a gratuitous response to a citizen inquiry. The possible relationship between the April 21 letter and the prior decisions cannot be determined from this record. Without the "entire record of proceedings before the agency," which includes the "documents on file concerning" Bashus' case, we cannot say the April 21 letter is a non-appealable order. Rather, we conclude the district court's dismissal of Bashus' appeal was, at best, premature.

Accordingly, we reverse the dismissal and remand for the Department to file the original or a certified copy of the "entire record of proceedings before the agency" so the status of Bashus' appeal can be decided by the district court.

MESCHKE, LEVINE and NEUMANN, JJ., concur.

VANDE WALLE, Chief Justice, concurring in result.

Ordinarily I do not believe correspondence from an agency to a client constitutes a final order as required for an effective appeal by section 28–32–15, NDCC. However, if the Department of Human Services conducted a formal review subsequent to receiving Bashus's letter which led to the executive director's April 21, 1993, letter, it is possible the April 21, 1993, letter might be an appealable final order. Insofar as Bashus's letter is not in the record and we are without knowledge as to what "review" if any was conducted, I agree we should remand to the district court for the purposes of making Bashus's letter a part of the record and to determine whether the department reopened the proceeding pursuant to section 28–32–14(5), NDCC.

The other items which are not in the record become relevant only if the April 21, 1993, letter is an appealable order. I do not agree with the majority's attempt to "bootstrap" these items into the determination of whether or not the April 21st letter is a final order.

3. 7 C.F.R. § 273.16(f)(2), provides in part:

"*(f) Waived hearings.* Each State agency shall have the option of establishing procedures to allow accused individuals to waive their rights to an administrative disqualification hearing. For State agencies which choose the option of allowing individuals to waive their rights to an administrative disqualification hearing, the procedures shall conform with the requirements outlined in this section.

\* \* \* \* \* \*

"*(2) Imposition of disqualification penalties.* (i) If the household member suspected of intentional Program violation signs the waiver of right to an administrative disqualification hearing and the signed waiver is received within the timeframes specified by the State agency, the household member shall be disqualified in accordance with the disqualification periods specified in paragraph (b) of this section. . . .

"(ii) No further administrative appeal procedure exists after an individual waives his/her right to an administrative disqualification hearing and a disqualification penalty has been imposed. The disqualification penalty cannot be changed by a subsequent fair hearing decision. The household member, however is entitled to seek relief in a court having appropriate jurisdiction. The period of disqualification may be subject to stay by a court of appropriate jurisdiction or other injunctive remedy."

4. Under N.D.A.C. § 75–01–03–03(2), the Department may, on its own motion, "review" individual cases and make decisions binding upon the county agency, and an aggrieved recipient has the opportunity for a fair hearing. *See* N.D.C.C. §§ 28–32–14(5); 50–09–14. *See also Shackelford v. Social Service Board of North Dakota*, 299 N.W.2d 549, 554 (N.D.1980).