2000 ND 96

**NORTH CENTRAL GOOD SAMARI-
TAN CENTER and Osnabrock Good
Samaritan Center, Plaintiffs and Ap-
pellants,**

v.

**NORTH DAKOTA DEPARTMENT OF
HUMAN SERVICES, Defendant
and Appellee.**

No. 990363.

Supreme Court of North Dakota.

May 17, 2000.

Monte L. Rogneby, Vogel Law Firm, Bismarck, ND, for plaintiffs and appellants.

Jean R. Mullen, Assistant Attorney General, Bismarck, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1] North Central Good Samaritan Center and Osnabrock Good Samaritan Center ("Good Samaritan") appealed from a judgment of the district court affirming the decision of the Department of Human Services ("Department"). The Department allowed reimbursement to Good Samaritan for supply costs actually incurred by Good Samaritan, but not for the actual cost of supplies to Good Samaritan's related entity, Good Samaritan Supply Services, Inc. ("Supply Services"). We affirm.

[¶ 2] This appeal centers around the rate at which the Department will reimburse Good Samaritan for providing services to North Dakota citizens under the Medicaid program for the rate year ending June 30, 1997. Good Samaritan and Supply Services are related through the Evangelical Lutheran Good Samaritan Society. The Evangelical Lutheran Good Samaritan Society is a not-for-profit corporation that owns and operates the two Good Samaritan facilities and partially owns Supply Services, a for-profit corporation.

[¶ 3] Good Samaritan purchased various supplies from Supply Services. Supply Services charged Good Samaritan a rate less than the actual cost of the supplies to Supply Services. Good Samaritan, in its cost report, sought reimbursement for the actual cost of the supplies to Supply Services. The Department denied Good Samaritan's cost report, only allowing reimbursement for the cost it actually paid for the supplies. Good Samaritan asked the Department to reconsider its decision, but the Department denied Good Samaritan's request.

[¶ 4] Good Samaritan sought review through an administrative hearing. The Administrative Law Judge ("ALJ") recommended affirming the Department's decision and disallowing Good Samaritan's requested rates. The Department adopted the ALJ's recommended decision. Good Samaritan appealed to the district court for review and the district court affirmed the Department's decision.

I

[¶ 5] Medicaid is a cooperative federal-state program designed to furnish financial assistance to needy people for their medical care. *Kryzsko v. Ramsey County Social Serv.*, 2000 ND 43, ¶ 6, 607 N.W.2d 237. It is administered at the federal level by the Department of Health and Human Services and at the state level by the Department. *Appeal of Dickinson Nursing Ctr. v. North Dakota Dept. of Human Servs.*, 353 N.W.2d 754, 756 (N.D.1984). The Medicaid program is accomplished by payment from the Department to health-care facilities that act as "providers" of services to eligible recipients. *Id.* The process of setting reimbursement rates in North Dakota is governed by Chapter 75–02–06 of the North Dakota Administrative Code.

[¶ 6] Nursing facilities must annually provide a cost report to the Department for costs associated with running a facility for a twelve month period ending on June 30. N.D. Admin. Code. § 75–02–06–02(2)(c). The Department may then perform an audit of the report. N.D. Admin. Code § 75–02–06–02(3). The Department's regulations divide reimbursement costs into four categories: direct care costs (§ 75–02–06–02.2); other direct care costs (§ 75–02–06–02.3); indirect care costs (§ 75–02–06–02.4); and property costs (§ 75–02–06–02.5). This case involves reimbursement for the cost of supplies, provided under indirect care costs. *See* N.D. Admin. Code § 75–02–06–02.4.

II

[¶ 7] In *Americana Healthcare Ctr. v. North Dakota Dept. of Human Serv.*, 540 N.W.2d 151, 153 (N.D.1995), we explained:

When an order of the Department is appealed to the district court and then to this [C]ourt, we review the Department's decision, not that of the district court. *Bashus v. North Dakota Department of Human Services,* 519 N.W.2d 296, 297 (N.D.1994); *Hakanson v. North Dakota Department of Human Services,* 479 N.W.2d 809, 811 (N.D.1992). Our review is limited to the record compiled before the Department. *Bashus, supra,* 519 N.W.2d at 297; *Hakanson, supra,* 479 N.W.2d at 811. Under Sections 28–32–21 and 28–32–19, we consider whether the Department's findings of fact are supported by a preponderance of the evidence, whether its conclusions of law are supported by the findings of fact, whether its decision is supported by the conclusions of law, and whether its decision is in accordance with the law. *Bashus, supra,* 519 N.W.2d at 297.

[¶ 8] Good Samaritan argues it should be reimbursed based on Supply Services cost of providing supplies, not the lesser amount Good Samaritan was charged by Supply Services. Good Samaritan contends Supply Services is a related entity and as such, the Department's rules require them to treat Good Samaritan and Supply Services as one entity. If the two are treated as one entity, Good Samaritan asserts the appropriate rate of reimbursement should be set according to Supply Services actual costs. The relevant statutory and administrative provisions militate against such a view.

[¶ 9] Section 50–24.4–10(3), N.D.C.C., states, "[t]he department shall analyze and evaluate each nursing home's cost report of allowable operating costs incurred by the nursing home during the reporting year immediately preceding the rate year for which the payment rate becomes effective." This provision empowers the department to analyze a nursing home's cost report for "*costs incurred* by the nursing home." *Id.* (emphasis added). Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Incurred, in an ordinary sense, means "to become subject to...." *American Heritage College Dictionary* 689 (3d ed.1997). Thus, the statutory provision contemplates Good Samaritan being reimbursed based on a rate it is charged, not based upon its related entity's actual costs.

[¶ 10] Nevertheless, Good Samaritan asserts the Department's administrative regulations explicitly recognize related entities must be treated as a single entity for rate setting purposes. *See* N.D. Admin. Code §§ 75–02–06–01(56) and 75–02–06–07(1). Section 75–02–06–07(1), N.D.A.C., states, "Except as provided in subsection 3, costs applicable to services, facilities, and supplies furnished to a provider by a related organization may not exceed the lower of the cost to the related organization or the price of comparable services, facilities, or supplies purchased elsewhere primarily in the local market." This related organization rule prohibits "sweetheart" deals where a related entity charges a price higher than market value to the nursing home and the nursing home gets reimbursed for the full amount.

[¶ 11] The provider in this case is Good Samaritan and the related entity is Supply Services. The cost of supplies furnished to Good Samaritan, the provider, did not exceed the cost to the related organization, Supply Services. Just the opposite is true. The cost of supplies to the related organization exceeded the cost of the supplies to the provider. Thus, N.D. Admin. Code § 75–02–06–07(1) has no impact on this case.

[¶ 12] Good Samaritan also argues this Court recognized the principle that related entities are to be treated as a single entity for purposes of rate setting in *Appeal of Dickinson Nursing Ctr.,* 353 N.W.2d at 757. In *Appeal of Dickinson Nursing Ctr.,* Werner G. Nistler, Jr. and Emerson J. Collier, were part of a partnership that owned and operated Dickinson Nursing Center ("DNC"). Nistler and

Collier purchased the partnership interests of the other partners through three transactions and entered into a new partnership agreement to own and operate DNC. In reporting their direct and indirect costs to the Department, Nistler and Collier claimed an increased depreciation cost of $25,730 and an interest expense of $59,345, based on the price paid by Nistler and Collier to acquire the other partners' 40 percent interest in DNC's assets. The Department held the related organization rule, N.D. Admin. Code § 75–02–06–07(1), applied to limit DNC's depreciation costs and interest expenses to no more than the cost to the seller, effectively disallowing DNC's claims relating to the acquisition of the facility by Nistler and Collier.

[¶ 13] In discussing the related organization rule, we quoted from *Stevens Park Osteopathic Hospital, Inc. v. U.S.*, 225 Ct. Cl. 113, 633 F.2d 1373, 1379 (1980):

> This regulation, like other 'related organization' rules, is intended to have a 'prophylactic' effect in guarding against bad faith dealing between organizations related through common control without inquiry into particular circumstances.... [The regulation] specifically recognizes that related organizations should be treated as a single entity for purposes of determining reasonable costs because the provider is, in effect, obtaining the facilities from itself. It is evident that inquiry into the fairness of transactions between related parties would be a demanding task indeed for the fiscal intermediary, while inquiry into the usually simpler issue of common control probably would have to take place anyway.

*Appeal of Dickinson Nursing Ctr.*, 353 N.W.2d at 758 (quoting *Stevens Park Osteopathic Hospital*, 225 Ct.Cl. 113, 633 F.2d 1373, 1379 (1980)). Good Samaritan seizes on the language stating "related organizations should be treated as a single entity," extracting this statement out of its proper context. *Id.* We quoted from *Stevens Park Osteopathic Hospital* to demonstrate the rationale behind the related organization rule as it was articulated in regard to federal regulations. *Appeal of Dickinson Nursing Ctr.*, 353 N.W.2d at 758 (explaining "[t]he rationale for this rule was expressed by the court in *Stevens Park Osteopathic Hospital, Inc. v. U.S.*, ... ").

[¶ 14] Importantly, the regulation in *Stevens Park Osteopathic Hospital* is different from our state's regulation. *Compare* 20 C.F.R. § 405.427(c)(2) (stating where the provider obtains items from a related organization, the "reimbursable cost should include the costs for these items at the cost to the supplying organization") *with* N.D. Admin. Code § 75–02–06–07(1) (stating "costs applicable to services, facilities, and supplies furnished to a provider by a related organization may not exceed the lower of the cost to the related organization or the price of comparable services, facilities, or supplies purchased elsewhere primarily in the local market").

[¶ 15] Furthermore, the quotation must be read in context with the facts presented and the law articulated in *Appeal of Dickinson Nursing Ctr.* We said the related organization rule is a "prophylactic measure which defines *any charges in excess of actual cost* as per se unreasonable," and "[o]nce relatedness is found, *acquisition costs are categorically disallowed* regardless of the fairness of the particular transaction." *Id.* at 758 (emphasis added). Collier and Nistler sought depreciation costs and interest expenses greater than the actual cost to the seller. Under the related organization rule, we held the Department could disallow costs above the actual cost to the seller.

[¶ 16] The analysis above demonstrates we did not hold the cost allowed for purposes of reimbursement must always be the cost to the seller when two entities are related. Instead, we held when a provider is charged a rate by a related entity greater than the actual cost to the related entity, the Department, under the related organization rule, may disallow acquisition costs. The holding in *Appeal of Dickinson*

*Nursing Ctr.* relied on N.D. Admin. Code § 75–02–06–07(1), and nothing in our opinion extended this administrative rule to circumstances beyond those covered by its plain language.

### III

[¶ 17] Good Samaritan argues the Department did not follow proper hearing procedures. Specifically, Good Samaritan alleges A) the Department wrongly concluded Good Samaritan had the burden of proof, and B) the Department failed to issue proper pre-hearing notice to Good Samaritan.

### A

[¶ 18] As to the burden of proof, the ALJ said, "it appears that there is no dispute of material fact and, therefore, there is no need to consider which party has the burden of proof. However, insofar as it may be relevant for the consideration and resolution of any fact in question, Good Samaritan has the burden of proof that it is entitled to the nursing and food supply expense stated in its cost report to the Department."

[¶ 19] Good Samaritan asserts because this case constitutes an adjudicative proceeding under N.D.C.C. § 28–32–01(1), the Department must have the burden of proof. Good Samaritan's sole source of support for this argument is *Walton v. North Dakota Dept. of Human Serv.,* 552 N.W.2d 336 (N.D.1996). In *Walton,* the Department conceded if the case was a "contested case" it would bear the burden of proof. *Id.* at 339. Since *Walton,* the legislature has replaced the term "contested case" with "adjudicative proceeding." 1997 Sess. Laws ch. 277, § 2. An "adjudicative proceeding" is broadly defined as "an administrative matter resulting in an agency issuing an order after an opportunity for hearing is provided or required."

[¶ 20] Although the arguments in *Walton* centered around whether it was a contested case, this Court did not enunci-

ate an axiom that the Department has the burden of proof in all contested cases. *Walton* must be read in light of the fact the Department was the moving party, unlike this case. It is "well-settled" the moving party has the burden of proof in administrative hearings. *Morrell v. North Dakota Dept. of Transp.,* 1999 ND 140, ¶ 14, 598 N.W.2d 111, 115 (N.D.1999); *see also Ringsaker v. Director, North Dakota Dept. of Transp.,* 1999 ND 127, ¶ 11, 596 N.W.2d 328; *Kopp v. North Dakota Workers Comp. Bureau,* 462 N.W.2d 132, 141 (N.D.1990); *Matter of Stone Creek Channel Improvements,* 424 N.W.2d 894, 898 (N.D.1988); *Kobilansky v. Liffrig,* 358 N.W.2d 781, 790 (N.D.1984).

[¶ 21] In *Walton,* a social worker received reports of incidents of abuse and neglect at the Waltons' daycare facility. The social worker completed a report, and based on this report the Child Protection Team ("Team") found probable cause to believe the Waltons had abused children. As a result the Team recommended the Waltons discontinue child care and the Waltons' names were placed in the child abuse information index. The Waltons filed an administrative appeal with the Department.

[¶ 22] Upon an administrative hearing for the review of proposed action of a board or agency, the proponent of the action is the moving party. *Matter of Stone Creek,* 424 N.W.2d at 898. It is evident the Department was the moving party in *Walton* because the Department was proposing there was probable cause to believe the Waltons had abused children in their daycare facility. Nonetheless, the Department argued the Waltons had the burden of proof because it was a not a "contested case," as no person's legal rights or interests were at stake. We disagreed, concluding the consequences resulting from a probable cause finding of child abuse affect the legal rights or interests of the person against whom it is directed.

[¶ 23] Good Samaritan is the moving party here because it is the proponent of the action. It originally proposed the rate at which it should be reimbursed in its cost report. When the Department rejected this rate, Good Samaritan proposed the Department should adjust its rate of reimbursement for certain supplies. The ALJ was correct in concluding Good Samaritan is the moving party and thus bears the burden of proof. To hold otherwise would mean the Department must accept every cost report as submitted or disprove its accuracy. *Walton* did not envision or ordain such a result.

## B

[¶ 24] Good Samaritan next argues the Department improperly failed to issue a complaint or pre-hearing notice to Good Samaritan. The procedure for an appeal from a nursing home rate determination does not involve a hearing on a complaint. N.D.C.C. § 50–24.4–18. As to the pre-hearing notice, Good Samaritan objected at the administrative hearing to the Department's failure to issue a written specification of issues. The ALJ offered Good Samaritan the opportunity to move for a continuance of the hearing for such time as necessary for the Department to serve a specification of issues for hearing and for Good Samaritan to further prepare to address the issues specified. Good Samaritan declined the opportunity and proceeded with the hearing.

[¶ 25] Furthermore, the Department sent a letter to Good Samaritan refusing reconsideration and stated each disputed item and the reason or basis for the dispute. The ALJ concluded this reasonably framed the issues for hearing. Good Samaritan, however, complains the Department went beyond its letter and shifted its position in response to Good Samaritan's case-in-chief.

[¶ 26] The ALJ said in regard to this issue.

The basic contention of the Department is that 'the related party adjustment for supplies provided by Good Samaritan Supply Services' is not an allowable cost because it is an operating loss. That is exactly how Good Samaritan itself described the proposed adjustment for its first appeal. It should not be a surprise to Good Samaritan that the Department would support that position with the evidence that Good Samaritan was not billed by and did not pay to Supply Services the amount of the proposed adjustment, and the contention that, therefore, the proposed adjustment is not a cost because it was not 'incurred by the nursing home' in accordance with the provision of N.D.C.C. § 50–24.4–10(3). If those contentions were unexpected, Good Samaritan has ably responded with its contentions and argument in rebuttal. Good Samaritan has not demonstrated that it has suffered any harm by lack of more specific notice of the bases of, or reasons for, the Department's decision. Failing to demonstrate harm resulting from insufficient notice, Good Samaritan did not suffer a violation of its due process rights. *Wahl v. Morton County Social Services*, 574 N.W.2d 859, 1998 ND 48, ¶ 8.

[¶ 27] We agree with the ALJ Good Samaritan was not prejudiced by any failure of the Department to more properly frame the issue for hearing.

[¶ 28] We affirm.

[¶ 29] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, JJ., RALPH R. ERICKSON, D.J., concur.

[¶ 30] RALPH R. ERICKSON, D.J., sitting in place of KAPSNER, J., disqualified.