2004 ND 24

**David GROSS, Appellant**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellee.**

No. 20030224.

Supreme Court of North Dakota.

Jan. 28, 2004.

---

Richard R. LeMay, Legal Services of North Dakota, Minot, N.D., for appellant.

Jean R. Mullen, Assistant Attorney General, Attorney General's Office, Bismarck, N.D., for appellee.

KAPSNER, Justice.

[¶ 1]  David Gross appealed from a district court judgment affirming a North Dakota Department of Human Services' decision finding Gross had misutilized medical services and placing him in the medicaid lock-in program under N.D. Admin. Code § 75–02–02–11. We conclude the Department's findings are supported by a preponderance of the evidence, and its findings support its decision to place Gross in the lock-in program. We affirm.

I

[¶ 2]  Medicaid is a cooperative federal-state program designed to furnish financial assistance to needy persons for their medically necessary care. *Allen v. Wessman,* 542 N.W.2d 748, 752 (N.D.1996). Each state electing to participate in the medicaid program is required to establish a plan to implement the program in that state. 42 U.S.C. § 1396a. North Dakota has elected to participate in the program and has designated the Department to implement a medicaid plan. *See* N.D.C.C. ch. 50–24.1. In implementing a medicaid plan, the Department must "provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan ... as may be necessary to safeguard against unnecessary utilization of such care and services." 42 U.S.C. § 1396a(a)(30)(A). Under 42 U.S.C. § 1396n(a)(2), the Department's plan may restrict a medicaid recipient from obtaining medicaid services from designated providers for a reasonable period of time if the individual has utilized services at a frequency or amount not medically necessary as determined in accordance with state utilization guidelines. The Department has adopted a lock-in program for medicaid recipients who have misutilized medical services to limit those recipient's medical care and treatment to a single physician to prevent continued misutilization of services. *See* N.D. Admin. Code § 75–02–02–11.

[¶ 3]  Gross is a medicaid recipient; he has received medical services from many providers for an assortment of medical problems. In December 1999, his treating physician at that time, Dr. Melissa Hall, recommended Gross for the lock-in program. After a medical utilization review of medical services provided to Gross from October 1, 1998, through January 31, 2000, the Department withdrew a recommendation to place Gross in the lock-in program and recommended reviewing his utilization in January 2001. In October 2000, Gross's treating physician at that time, Dr. Michael Sheaffer, recommended Gross for the lock-in program. In January 2001, the Department conducted a utilization review

of medical services provided to Gross from February 1, 2000, through January 2, 2001.

[¶ 4] In May 2001, the Department notified Gross it had determined he had misutilized medical services and was being placed in the lock-in program. The Department notified Gross it had found he had sought second opinions for the same condition from a large number and variety of physicians, he had failed to comply with physician recommendations, he had switched primary care physicians when an attempt had been made to address addiction issues, and his decision to switch primary care physicians had detrimentally affected the care of his addiction and other issues. The Department informed Gross he would be required to select one physician and one pharmacy for his medical care, and before he could receive any medical services from other physicians, he would have to receive a referral from his lock-in physician. *See* N.D. Admin. Code § 75–02–02–11(5). The Department advised Gross he would be responsible for payment of any medical services received without a referral from his lock-in physician. *Id.*

[¶ 5] Gross requested a hearing. After a formal hearing, an administrative law judge ("ALJ") recommended affirming the decision to place Gross in the lock-in program. The Department adopted the ALJ's recommendation, and Gross appealed to the district court. The district court dismissed Gross's appeal, but this Court reversed the district court's decision and remanded to that court for a decision on the merits. *Gross v. North Dakota Dep't of Human Servs.*, 2002 ND 161, ¶¶ 1, 12, 652 N.W.2d 354. On remand, the district court affirmed the Department's decision.

## II

[¶ 6] When an administrative agency decision is appealed from the district court to this Court, we review the agency's decision and the record compiled before the agency, rather than the decision and findings of the district court, although the district court's analysis is entitled to respect if its reasoning is sound. *New Town Pub. Sch. Dist. v. State Bd. of Pub. Sch. Educ.*, 2002 ND 127, ¶ 5, 650 N.W.2d 813; *Feist v. North Dakota Workers Compensation Bur.*, 1997 ND 177, ¶ 8, 569 N.W.2d 1. Under N.D.C.C. §§ 28–32–46 and 28–32–49, we affirm an agency's decision if its findings of fact sufficiently address the evidence presented by the appellant and are supported by a preponderance of the evidence, its conclusions of law and order are supported by its findings of fact, its decision is supported by its conclusions of law, its decision is in accordance with the law and does not violate the claimant's constitutional rights, its rules or procedures have not deprived the appellant of a fair hearing, its conclusions of law and order sufficiently explain its rationale for not adopting any contrary recommendation by an ALJ, and the provisions of N.D.C.C ch. 28–32 have been complied with in proceedings before the agency. In reviewing an agency's findings of fact, we do not make independent findings of fact or substitute our judgment for that of the agency. *New Town*, at ¶ 5. Rather, we determine only whether a reasoning mind could have reasonably determined the agency's factual conclusions were supported by the weight of the evidence from the entire record. *Id.*

[¶ 7] Gross argues the Department failed to meet its burden of showing he misutilized medical services under N.D. Admin. Code § 75–02–02–11, which provides, in part:

1. For purposes of this section:

a. "Lock-in" means the process used to limit a recipient's medical care and treatment to a single physician or

other provider in order to prevent the continued misutilization of services.

. . . .

c. "Misutilization" means the incorrect, improper, or excessive utilization of medical services which may increase the possibility of adverse effects to a recipient's health or may result in a decrease in the overall quality of care.

2. Lock-in may be imposed by the department on a recipient who has misutilized services, including:

a. Securing excessive services from more than one provider when there is little or no evidence of a medical need for those services;

b. Drug acquisition in excess of medical need resulting from securing prescriptions or drugs from more than one provider; or

c. Excessive utilization of emergency services when no medical emergency is present.

. . . .

4. The following factors must be considered in determining if lock-in is to be imposed:

a. The seriousness of the misutilization;

b. The historical utilization of the recipient; and

c. The availability of a lock-in physician or provider.

Gross concedes he received medical services on numerous occasions, but he claims it is undisputed he was in need of those services. He argues the Department must show more than frequent use of medical services to establish misutilization under N.D. Admin. Code § 75–02–02–11. He argues he did not misutilize medical services, because he had valid medical reasons for each of his visits to doctors. We reject Gross's narrow interpretation of N.D. Admin. Code § 75–02–02–11.

[¶ 8] We construe administrative regulations, which are derivatives of statutes, under well-established principles for statutory construction. *North Dakota Dep't of Human Servs. v. Ryan*, 2003 ND 196, ¶ 11, 672 N.W.2d 649. Misutilization means "excessive utilization of medial services which may increase the possibility of adverse effects to a recipient's health or may result in a decrease in the overall quality of care." N.D. Admin. Code § 75–02–02–11(1)(c). Under N.D. Admin. Code § 75–02–02–11(2), the Department may impose a lock-in on a recipient who has misutilized services, including securing excessive services from more than one provider when there is little or no evidence of a medical need for those services. A definition that uses the word "includes" is partial and non-exclusive. *See Hilton v. North Dakota Educ. Ass'n*, 2002 ND 209, ¶ 12, 655 N.W.2d 60. The plain language of N.D. Admin. Code § 75–02–02–11(1)(c) and (2) authorizes the Department to place a medicaid recipient in the lock-in program for excessive utilization of medical services from more than one provider when those excessive medical services may increase the possibility of adverse effects to the recipient's health or may result in a decrease in the overall quality of care to the recipient and when there is little or no evidence of a medical need.

[¶ 9] Although Gross claims he had a medical reason for each visit to various doctors, the Department's decision recognized Gross's history of seeing many physicians and switching physicians. Two of Gross's primary care physicians, Dr. Hall and Dr. Sheaffer, recommended he be placed in the lock-in program. Dr. Hall expressed concerns about Gross's "addiction to benzodiazepines," and Dr. Sheaffer expressed concerns about getting Gross

into the lock-in program to "help him to abide by physicians' recommendations." The Department found Gross had experienced adverse health problems as a result of uncoordinated medical care. The Department's first utilization review in February 2000 indicated Gross had seen seventeen different physicians from October 1, 1998, through January 31, 2000, with seven physicians prescribing medications, and out of thirty-eight prescriptions, twenty-one were considered addicting. The Department's second utilization review was conducted in January 2001 and covered from February 1, 2000, through January 2, 2001. The Department found that during that time, Gross saw sixteen different physicians, with four prescribing medications, and out of sixty-nine prescriptions, thirty-five were considered possibly addicting. The Department also found Gross saw "a large number of physicians for opinions concerning the same condition, problems with his eyes."

[¶ 10]    The Department found the decision to place Gross in the lock-in program was supported by a preponderance of the evidence, stating the testimony and documentary evidence shows "the decision was made as a result of concern for Mr. Gross's health to address his addiction to medication, and to halt his pattern of going from doctor to doctor seeking one who might have an opinion which may be in better agreement with what he thinks might be done to correct his problem." The Department concluded Gross's "excessive utilization of medical services for the same condition and switching physicians to avoid addressing his addiction to certain medications amounts to misutilization" under N.D. Admin. Code § 75–02–02–11(1)(c).

[¶ 11]    Under this Court's deferential standard of review of agency decisions, we do not make independent findings of fact or substitute our judgment for that of the Department. We conclude a reasoning mind could reasonably conclude from the entire record that Gross's excessive use of medical services constituted misutilization under N.D. Admin. Code § 75–02–02–11. We therefore conclude the Department's findings are supported by a preponderance of the evidence, and its findings support its decision to place Gross in the lock-in program.

### III

[¶ 12]    We affirm the judgment affirming the Department's decision.

[¶ 13] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.