2004 ND 63

**ST. BENEDICT'S HEALTH CENTER, Appellee**

v.

**NORTH DAKOTA DEPARTMENT OF HUMAN SERVICES, Appellant.**

**No. 20030289.**

Supreme Court of North Dakota.

March 25, 2004.

Leslie Bakken Oliver, Vogel Law Firm, Bismarck, N.D., for appellee.

Jean R. Mullen, Assistant Attorney General, Attorney General's Office, Bismarck, N.D., for appellant.

MARING, Justice.

[¶ 1] The North Dakota Department of Human Services appealed from a district court judgment reversing the Department's determination that for purposes of establishing St. Benedict's Health Center's direct care costs for its medicaid reimbursement rate for the 2001 rate year, St. Benedict's non-certified "nursing department helpers" were not "nurse aides." We conclude the Department's interpretation of nurse aides to mean certified nurse aides is reasonable and entitled to deference. We reverse the judgment and reinstate the Department's decision.

I

[¶ 2] The issue in this case involves St. Benedict's medicaid reimbursement rate for nursing home care provided to qualifying residents for the 2001 rate year. Medicaid is a cooperative federal-state program designed to provide health care to needy people. *North Cent. Good Samaritan Ctr. v. North Dakota Dep't of Human Servs.*, 2000 ND 96, ¶ 5, 611 N.W.2d 141. The Medicaid program is administered at the federal level by the United States Department of Health and Human Services and at the state level by the Department. *Id.* Under the Medicaid program, the Department establishes a medicaid reimbursement rate for health-care facilities that provide services to eligible recipients. *Id.* The Department is authorized to promulgate rules for determining medicaid reimbursement rates which "must be based on methods and standards which the department finds are adequate to recognize the costs that must be incurred for the care of residents in efficiently and economically operated nursing homes." N.D.C.C. § 50–24.4–02. The Department's methodology for setting medicaid reimbursement rates is governed by N.D.C.C. ch. 50–24.4 and N.D. Admin. Code ch. 75–02–06.

[¶ 3] A health-care facility that provides services to eligible medicaid recipients must provide annual cost reports to the Department for costs associated with running the facility for a twelve-month period ending on June 30. N.D. Admin. Code. § 75–02–06–02(2)(c). The Department may then audit the facility's cost report. N.D. Admin. Code § 75–02–06–02(3). The Department's regulations categorize costs for calculating medicaid rates as direct care costs, other direct care costs, indirect care costs, and property costs. N.D. Admin. Code §§ 75–02–06–02.2 to 75–02–06–02.5. Direct care costs mean the cost category for allowable nursing and therapy costs, and indirect care costs include administration and housekeeping costs. *See* N.D.C.C. § 50–24.4–01 and N.D. Admin. Code § 75–02–06–01. As relevant to St. Benedict's medicaid reimbursement rate for the 2001 rate year, N.D. Admin. Code § 75–02–06–02.2(2)(a) identified direct care costs for nursing as "[s]alary and employment benefits for the director of nursing, nursing supervisors, inservice trainers for nursing staff, registered nurses, licensed practical nurses,

quality assurance personnel, nurse aides, orderlies, and ward clerks."

[¶ 4] According to Pam Becker, St. Benedict's director of nursing, St. Benedict's employed some "certified nurse assistants" and also employed between twenty-two and twenty-five "nursing department helpers" who had not been certified as "nurse aides" under 42 C.F.R. § 483.75(e) and who performed "non-hands-on jobs that a [certified nurse assistant] is required to do." St. Benedict's job description for its "nursing department helpers" summarizes the job as "[u]nder the supervision of the Charge Nurse, or designee, completes tasks not associated with direct hands-on resident care," and lists the following duties and responsibilities:

1. Live and teach St. Benedict's Mission and Values.
2. Establish and maintain positive interpersonal relationships with other team members characterized by open communication, trust and respect.
3. Deliver linen to units and rooms daily.
4. Pick up and distribute water pitchers with fresh water. Distribute clean water glasses and pick up soiled glasses.
5. Make beds.
6. Wash beds, bedside tables, over the bed tables, wheelchairs, walkers, and other items as instructed.
7. Clean humidifiers.

8. May be asked to empty dirty linen and garbage as needed.
9. Deliver supplies and stock shelves.
10. Assist with transportation of residents in wheelchairs to activities, meals, lunches, church services and special events.
11. Pass between meal nourishments.
12. Distribute clothing protectors in Dining Room and pick up soiled clothing protectors after meals.
13. Prepare wash cloths for post meal grooming techniques, distribute, and pick up after use.
14. Chart percentage of meal consumed, fluid intake, and percentage of supplement consumed, under direction and supervision of charge nurse in Dining Room.
15. Distribute meal trays.
16. Comply with all facility policies and procedures.

[¶ 5] The issue in this case is whether the salaries and fringe benefits paid by St. Benedict's to its uncertified "nursing department helpers" are allocated as "direct care costs" for "nurse aides," or "indirect care costs" for "housekeeping" or "administration."[1] Barbara Fischer, the manager of Long Term Care and Hospital Services for the Department's Medical Services Division, concluded federal medicaid law required St. Benedict's "nursing department helpers" to be certified, or working on certification, to be classified as

---

1. Section 75–02–06–02.2(2)(a), N.D. Admin. Code, has been amended and now identifies direct care costs for nursing as "[s]alary and employment benefits for the director of nursing, nursing supervisors, inservice trainers for nursing staff, registered nurses, licensed practical nurses, quality assurance personnel, *certified nurse aides*, individuals providing assistance with activities of daily living identified in subdivision a of subsection 5 of section 75– 02–06–17, individuals with a cognitive impairment who provide care-related services and who require the direction or supervision of a registered nurse in order to perform those services, and ward clerks." (emphasis added). St. Benedict's claims, and the Department does not dispute, the Department's action in this case reduced St. Benedict's medicaid reimbursement rate for the 2001 rate year by $83,000.

"nurse aides" for the 2001 rate year. Fischer decided the appropriate cost category for salaries and fringe benefits for St. Benedict's uncertified "nursing department helpers" was "housekeeping," an indirect care cost category under N.D. Admin. Code § 75–02–06–02.4(5), or a "catch all" for administrative costs, also an indirect care cost category under N.D. Admin. Code § 75–02–06–02.4(1)(u).

[¶ 6] St. Benedict's appealed the Department's determination, and an Administrative Law Judge ("ALJ") recommended concluding St. Benedict's nursing department helpers were nurse aides whose salaries and fringe benefits were direct care costs for purposes of setting its 2001 medicaid reimbursement rate. The ALJ construed nurse aides to mean any individuals providing nursing or nursing-related services to residents and concluded St. Benedict's nursing department helpers were providing those services to St. Benedict's residents and were "nurse aides" under that definition.

[¶ 7] The Department's executive director rejected the ALJ's recommendation, concluding St. Benedicts's nursing department helpers were not nurse aides because they were not certified to perform nursing-related services as required by federal medicaid law. The Department thus concluded the salaries and fringe benefits for St. Benedict's nursing department helpers were indirect care costs for purposes of setting St. Benedict's 2001 medicaid reimbursement rate. The district court reversed the Department's decision and reinstated the ALJ's decision.

II

■ [¶ 8] When an administrative agency decision is appealed from the district court to this Court, we review the agency's decision and the record compiled before the agency, rather than the district court's decision and findings, although the district court's analysis is entitled to respect if its reasoning is sound. *Gross v. North Dakota Dep't of Human Servs.,* 2004 ND 24, ¶ 6, 673 N.W.2d 910. Under N.D.C.C. §§ 28–32–46 and 28–32–49, we affirm an agency's decision if its findings of fact sufficiently address the evidence and are supported by a preponderance of the evidence, its conclusions of law and order are supported by its findings of fact, its decision is supported by its conclusions of law, its decision is in accordance with the law and does not violate the claimant's constitutional rights, its rules or procedures have not deprived the claimant of a fair hearing, its conclusions of law and order sufficiently explain its rationale for not adopting any contrary recommendation by an ALJ, and the provisions of N.D.C.C. ch. 28–32 have been complied with in proceedings before the agency. In reviewing an agency's findings of fact, we do not make independent findings of fact or substitute our judgment for that of the agency. *Gross,* at ¶ 6. Rather, we determine only whether a reasoning mind reasonably could have determined the agency's factual conclusions were supported by the weight of the evidence from the entire record. *Id.*

■ [¶ 9] Although the interpretation and application of administrative regulations generally presents a question of law, we give deference to an administrative agency's reasonable interpretation of its own regulations. *Americana Healthcare Ctr. v. North Dakota Dep't of Human Servs.,* 540 N.W.2d 151, 153 (N.D.1995). An agency has a reasonable range of discretion to interpret and apply its own regulations, and the agency's expertise is entitled to deference when the subject matter is complex or technical. *Id.* On several occasions, we have said the scheme for determining medicaid reimbursement

rates in N.D. Admin. Code ch. 75–02–06 involves complex and technical matters calling for agency expertise, and the Department's expertise in this area is entitled to deference. *Prairieview Nursing Home v. North Dakota Dep't of Human Servs.*, 1999 ND 142, ¶ 16, 598 N.W.2d 116; *Americana Healthcare*, at 153; *Americana Healthcare Ctrs. v. North Dakota Dep't of Human Servs.*, 510 N.W.2d 592, 594 (N.D.1994); *Dickinson Nursing Ctr. v. North Dakota Dep't of Human Servs.*, 353 N.W.2d 754, 758 (N.D.1984).

### III

[¶ 10] The Department argues St. Benedict's nursing department helpers are not nurse aides for purposes of direct care costs under N.D. Admin. Code § 75–02–06–02.2(2) because they are not certified or working on certification under applicable federal medicaid regulations in 42 C.F.R. § 483.75, which provides:

> (e) Required training of nursing aides—
>
> (1) Definitions....
>
> Nurse aide means any individual providing nursing or nursing-related services to residents in a facility who is not a licensed health professional, a registered dietitian, or someone who volunteers to provide such services without pay.
>
> (2) General rule. A facility must not use any individual working in the facility as a nurse aide for more than 4 months, on a full-time basis, unless:
>
> (i) That individual is competent to provide nursing and nursing related services; and
>
> (ii)(A) That individual has completed a training and competency evaluation program, or a competency evaluation program approved by the State as meeting the requirements of §§ 483.151–483.154 of this part; or

> (B) That individual has been deemed or determined competent as provided in § 483.150(a) and (b).

The Department argues it reasonably interpreted nurse aides to follow federal medicaid law and require certification, and its interpretation of its administrative rule is entitled to deference.

[¶ 11] St. Benedict's responds the Department's interpretation of nurse aides disregards controlling precedent from an unappealed district court decision, which reversed a Department determination that salaries and fringe benefits for bedmakers were indirect care costs. St. Benedict's argues the duties of nursing department helpers are nursing interventions under standards for nursing practice and may be delegated by a licensed nurse to a nursing department helper. St. Benedict's argues the Department did not adequately explain its reasons for rejecting the ALJ's recommendation, the Department's findings of fact are not supported by a preponderance of the evidence, the Department's order is not in accordance with the law, and the Department exceeded its authority in effectively amending its administrative rule to impose a certification requirement for nurse aides.

[¶ 12] St. Benedict's reliance on an unappealed district court decision as "controlling" precedent is misplaced. The unappealed district court decision effectively concluded bedmakers were nurse aides under N.D. Admin. Code § 75–02–06–02.2(2). Although an unappealed district court decision may be res judicata as to the rights of the parties to that action, *see Cridland v. North Dakota Workers Comp. Bureau*, 1997 ND 223, ¶¶ 1, 30, 571 N.W.2d 351, and may have some persuasive effect, we reject St. Benedict's claim the unappealed district court decision controls this case.

[¶ 13] Rather, this case turns on whether St. Benedict's uncertified nursing department helpers are nurse aides under N.D. Admin. Code § 75–02–06–02.2(2)(a). The ALJ said the Department had no rule that defined nurse aides as persons who have been certified, and 42 C.F.R. § 483.75(e) plainly defined nurse aide as any individual providing nursing or nursing-related services to facility residents. The ALJ recognized the federal regulation prohibited a facility from using a person as a nurse aide for more than four months unless that person had completed a training and competency evaluation program. However, the ALJ concluded although St. Benedict's use of nursing department helpers may not conform with federal regulations for the use of nurse aides, that failure did not mean nursing department helpers were not nurse aides for purposes of medicaid rates. The ALJ said, "if there is any ambiguity in the meaning of a term used in a rule, the term is to be understood in its ordinary sense unless a contrary intention plainly appears." The ALJ cited definitions of "nursing" and "nursing intervention" from the Nurse Practices Act, N.D.C.C. § 43–12.1–02(5), and from the North Dakota Board of Nursing Regulations, N.D. Admin. Code § 54–01–03–01(38), to construe nurse aides to mean any individuals providing nursing-related services to residents. The ALJ concluded St. Benedict's nursing department helpers were providing nursing-related services to St. Benedict's residents and therefore were nurse aides. The ALJ rejected the Department's claim that deference must be given to the Department's interpretation of its rules in this complex and technical area, stating, "[i]t is only after the Department's executive director acts for the interpretation of its rules by adopting, rejecting or revising its hearing officer's [decision] that [there] is ... an interpretation of the Department's rules which may be entitled to deference upon further review and consideration by the courts."

[¶ 14] The Department rejected the ALJ's recommendation, concluding the ALJ did not accurately construe 42 C.F.R. § 483.75(e) regarding the training and competency requirement of nurse aides and confused Board of Nursing and Health Department functions and interpretations of what constitutes a nurse aide under their respective jurisdictions. The Department concluded St. Benedict's nursing department helpers were not nurse aides because they had not completed training and competency programs to perform nursing-related services as required by federal medicaid law. The Department's findings and conclusions state:

10. Barbara Fischer, Long–Term Care Manager for the Department, testified that services in the direct care [cost] category reflect those services for nursing home residents that can be attributed to each individual resident based on his or her level of medical complexity and physical condition. Services provided to a resident that are not specific to that resident's medical or physical condition were included in the indirect or other direct care cost categories. As the Notice dated October 17, 2001, states, there is nothing to show that St. Benedict's nursing department helpers perform tasks that provide assistance directly to a resident with the activities of daily living. The Notice stated that St. Benedict's, as a Medicaid provider, is required to abide by federal participation requirements including the requirement that nurse aides must be certified and that if nursing department helpers are truly performing nursing tasks, then they must be certified or working on certification.

11. While the Department is the agency charged with the implementation

of the Medicaid program in North Dakota under N.D.C.C. ch. 50–24.1, it has agreed with the North Dakota State Department of Health for the survey of nursing facilities to ensure and certify compliance with state and federal regulations for the administration of the Medicaid program. Ms. Fischer testified that the Department, in implementing the Medicaid program, is required to follow the federal law which includes a definition of nurse aide. Ms. Fischer stated that the definition of nurse aide in the direct care cost category was the definition found in federal Medicaid regulations which requires an individual who is permitted to perform nursing or nursing-related tasks in a nursing home to have successfully completed a training and evaluation program or is working toward successful completion. The nursing department helpers have not successfully completed such a training and evaluation program nor was there evidence to show that they were working toward such training completion.

. . . .

4. Federal regulation defines "nurse aide", in relevant part, as any individual providing nursing or nursing-related services to residents in a facility. 42 C.F.R. § 483.75(e)(1). The definition further requires that a facility must not use any individual working in the facility as a nurse aide for more than four months, on a full-time basis, unless: (i) that individual is competent to provide nursing and nursing-related services; and (ii)(A) that individual has completed a training and competency evaluation program, or a competency evaluation program approved by the State as meeting the requirements of 42 C.F.R. §§ 483.151–483.154; or (B) that individual has been deemed or determined competent as provided in § 483.150(a) and (b). 42 C.F.R. § 483.75(e)(2).

5. St. Benedict's use of nursing department helpers does not conform to the requirements of federal regulations for the use of nurse aides within a nursing facility.

6. Individuals who perform the tasks performed by these nursing department helpers do not have to be healthcare professionals. However, St. Benedict's claims these individuals are providing nursing-related services. Therefore, under the federal Medicaid regulations, these non-health care professionals must have successfully completed a training and competency program in order to perform these tasks.

7. The nursing department helpers employed by St. Benedicts's have not completed a training and competency evaluation program, or a competency evaluation program approved by the State nor are they working toward such certification and therefore they are not nurse aides within the meaning of the federal regulation for the administration of the Medicaid program and the Department's rules for the classification of direct care costs for nursing home rate setting pursuant to N.D. Admin. Code ch. 75–02–06.

■ [¶ 15] We conclude the ALJ's rationale for declining to give deference to the Department's interpretation of its regulations represents an erroneous application of the law. We have recognized the scheme for setting medicaid reimbursement rates involves complex and technical matters calling for agency expertise, and the agency's expertise in this complex and technical area is entitled to deference. *Prairieview Nursing Home*, 1999 ND 142, ¶ 16, 598 N.W.2d 116, *Americana Healthcare*, 540 N.W.2d at 153; *Americana Healthcare*, 510 N.W.2d at 594; *Dickinson Nursing Ctr.*, 353 N.W.2d at 758. Con-

trary to the ALJ's statement, the application of that deference is not limited to situations occurring after the Department's executive director interprets a regulation by adopting, rejecting, or revising a hearing officer's decision.

[¶ 16] Furthermore, we conclude the Department's decision adequately explains its rationale for rejecting the ALJ's recommendation. The Department's decision adequately explained the Department's reliance on the federal requirement for certification of nurse aides. Barbara Fischer's testimony supports the Department's interpretation of its administrative regulation. We conclude the Department's interpretation of nurse aides is supported by a preponderance of the evidence, does not contradict the language of N.D. Admin. Code § 75–02–06–02.2(2), is consistent with applicable federal medicaid regulations, and is reasonable and entitled to deference.

[¶ 17] We reject St. Benedict's claim the Department's interpretation of nurse aides effectively amended N.D. Admin. Code § 75–02–06–02.2(2). St. Benedict's has not argued estoppel against the Department. *See Singha v. North Dakota State Bd. of Med. Exam'rs*, 1998 ND 42, ¶ 34, 574 N.W.2d 838 (stating "[e]stoppel against an administrative agency is not freely applied"). The Department initially adopted the language for nurse aides in 1990 when the applicable federal regulations required nurse aides to be certified. *See* 42 C.F.R. § 483.75(g) (1989). There is evidence the Department recently learned St. Benedict's had been claiming direct care costs for its uncertified nursing department helpers after an audit. On this record, the Department is not precluded from applying that definition to St. Benedict's 2001 medicaid reimbursement rate, and its interpretation of nurse aides is not an amendment of the rule.

## IV

[¶ 18] We conclude the Department's interpretation of its administrative regulation is reasonable and is entitled to deference. We, therefore, reverse the district court judgment and reinstate the Department's order.

[¶ 19] GERALD W. VANDE WALLE, C.J., LAWRENCE A. LECLERC, D.J., WILLIAM A. NEUMANN, and DALE V. SANDSTROM, JJ., concur.

[¶ 20] The Honorable LAWRENCE A. LECLERC, D.J., sitting in place of KAPSNER, J., disqualified.